**WILLIAM M. NARUS, CAB #243633**
Acting United States Attorney
District of Oregon
**PATRICK J. CONTI, CAB #271046**
Assistant United States Attorney
Patrick.Conti@usdoj.gov
1000 SW Third Avenue, Suite 600
Portland, Oregon 97204-2936
Phone: 503.727.1000
        Attorneys for Defendants

# UNITED STATES DISTRICT COURT

# DISTRICT OF OREGON

| | |
|---|---|
| **PINEROS Y CAMPESINOS UNIDOS DEL NOROESTE, et al.,** | Case No. 6:25-cv-00699-AA |
| Plaintiffs, | **DEFENDANTS' MOTION TO DISMISS** |
| **v.** | Fed. R. Civ. P. 12(b)(1) |
| **KRISTI NOEM, et al.,** | Fed. R. Civ. P. 12(b)(6) |
| Defendants. | |

# Table of Contents

CERTIFICATE OF COMPLIANCE WITH LR 7-1 ................................................. 1

MOTION ............................................................................................................ 1

INTRODUCTION ............................................................................................... 1

BACKGROUND ................................................................................................. 3

    A.    Statutory Background .......................................................... 3

    B.    DHS Internal Guidance Regarding Immigration Enforcement Actions in or Near Sensitive Locations ............................... 4

    C.    Factual and Procedural Background .................................. 6

    D.    Related Lawsuits ................................................................. 7

STANDARD OF REVIEW ................................................................................. 8

ARGUMENT ...................................................................................................... 9

    A.    Plaintiffs Lack Article III Standing .................................. 9

        1.    No cognizable injury ............................................ 10

        2.    The alleged injury is not traceable to the 2025 Guidance ...... 13

        3.    Nor would a favorable decision redress the alleged injury .... 16

    B.    The Complaint Fails to State a RFRA Claim .................. 17

        1.    No substantial burden to religious exercise ........ 18

        2.    Even if the 2025 Guidance imposed a substantial burden, it furthers compelling government interests in the least restrictive means ......... 21

    C.    The Complaint Fails to State a First Amendment Claim ......... 24

        1.    No significant burden to the right to associate ...... 25

2.    The 2025 Guidance furthers compelling government interests through narrowly tailored means...............................................27

D.    The Court Lacks Jurisdiction over the APA Claim ..........................27

1.    The 2025 Guidance to immigration enforcement is committed to agency discretion...................................................................27

2.    No reviewable final agency action ...........................................29

CONCLUSION ...................................................................................32

# Table of Authorities

## Federal Cases

*Al-Owhali v. Ashcroft*, 279 F. Supp. 2d 13 (D.D.C. 2003) .................................... 13

*Allen v. Wright*, 468 U.S. 737 (1984) ................................................................. 9-10

*Apache Stronghold v. United States*, 101 F.4th 1036 (9th Cir. 2024) ................ 18

*Arizona v. United States*, 567 U.S. 387 (2012) .......................................... 3, 22, 28

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ..................................................................... 9

*Ass'n of Flight Attendants-CWA, AFL-CIO v. Huerta*, 785 F.3d 710
    (D.C. Cir. 2015) ............................................................................................ 31, 32

*Bennett v. Spear*, 520 U.S. 154 (1997) ................................................................... 30

*Blackie's House of Beef, Inc. v. Castillo*, 659 F.2d 1211 (D.C. Cir. 1981) ...... 21, 24

*Bowen v Roy*, 476 U.S. 693 (1986) ......................................................................... 20

*Boy Scouts of Am. v. Dale*, 530 U.S. 640 (2000) ............................................. 24, 25

*Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682 (2014) ............................. 17, 20

*California v. Texas*, 593 U.S. 659 (2021) ............................................................... 13

*City of Boerne v. Flores*, 521 U.S. 507 (1997) ...................................................... 18

*Clapper v. Amnesty Int'l USA*, 568 U.S. 398 (2013) ................................... *passim*

*Ctr. for Cmty. Action & Envtl. Justice v. BNSF R. Co.*,
    764 F.3d 1019 (9th Cir. 2014) ............................................................................. 9

*DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332 (2006) ........................................... 9

*Dep't of Com. v. New York*, 588 U.S. 752 (2019) .................................................. 14

*Doe v. Irwin*, 615 F.2d 1162 (6th Cir. 1980) ........................................................ 18

*Employment Division v. Smith*, 494 U.S. 872 (1990) .......................................... 18

*Fernandez v. Mukasey*, 520 F.3d 965 (9th Cir. 2008) ........................................... 21

*Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367 (2024) ...... 15, 16

*Gallo Cattle Co. v. U.S. Dep't of Agric.*, 159 F.3d 1194 (9th Cir. 1998) ............. 30

*Garland v. Aleman Gonzalez*, 596 U.S. 543 (2022) ............................................... 3

*Go Leasing, Inc. v. Nat'l Transp. Safety Bd.*, 800 F.2d 1514 (9th Cir. 1986) ..... 28

*Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*,
    546 U.S. 418 (2006) ........................................................................ 22

*Heckler v. Chaney*, 470 U.S. 821 (1985) ........................................................ 27, 29

*Inst. for Fisheries Res. v. Hahn*, 424 F. Supp. 3d 740 (N.D. Cal. 2019) ............. 30

*Iowaska Church of Healing v. Werfel*, 105 F.4th 402 (D.C. Cir. 2024) ......... 21, 23

*Juliana v. United States*, 947 F.3d 1159 (9th Cir. 2020) .................................... 10

*Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375 (1994) ........................ 8

*Laird v. Tatum*, 408 U.S. 1 (1972) ................................................................ 10, 26

*Lujan v. Defs. of Wildlife*, 504 U.S. 555 (1992) ............................................. 16-17

*Lyng v. Nw. Indian Cemetery Protective Ass'n*, 485 U.S. 439 (1988) ................. 20

*Mennonite Church USA v. U.S. Department of Homeland Security*,
    No. 25-cv-00403 (DLF), __ F. Supp. 3d __, 2025 WL 1094223
    (D.D.C. Apr. 11, 2025) ........................................................ *passim*

*Nat'l Treasury Emps. Union v. Von Raab*, 489 U.S. 656 (1989) ........................ 21

*Navajo Nation v. U.S. Forest Serv.*, 535 F.3d 1058 (9th Cir. 2008) ................... 18

*Nken v. Holder*, 556 U.S. 418 (2009) ................................................................. 22

*Philadelphia Yearly Meeting of Religious Soc'y of Friends v. U.S. Dep't of
    Homeland Sec.*, 767 F. Supp. 3d 293 (D. Md. 2025) ...........................7

*Pistor v. Garcia*, 791 F.3d 1104 (9th Cir. 2015) ...................................................... 9

*Presbyterian Church (U.S.A.) v. United States,* 870 F.2d 518 (9th Cir. 1989) ...... 13

*Real Alternatives, Inc. v. Sec'y Dep't of Health & Hum. Servs.,*
  867 F.3d 338 (3d Cir. 2017) ............................................................................... 19

*Roberts v. U.S. Jaycees*, 468 U.S. 609 (1984) ................................................ 24, 25

*Robinson v. United States*, 586 F.3d 683 (9th Cir. 2009) ...................................... 8

*Rumsfeld v. F. for Acad. & Institutional Rts., Inc.*, 547 U.S. 47 (2006) ............. 25

*S. California All. of Publicly Owned Treatment Works v. U.S. Env't Prot. Agency,*
  8 F.4th 831 (9th Cir. 2021) ................................................................................. 32

*Safe Air for Everyone v. Meyer*, 373 F.3d 1035 (9th Cir. 2004) ............................. 8

*Sherbert v. Verner*, 374 U.S. 398 (1963) ...................................................... 19, 20

*Singh v. Berger*, 56 F.4th 88 (D.C. Cir. 2022) ...................................................... 23

*Susan B. Anthony List v. Driehaus*, 573 U.S. 149 (2014) ..................................... 11

*United States v. Grady*, 18 F.4th 1275 (11th Cir. 2021) ....................................... 23

*United States v. Lee*, 455 U.S. 252 (1982) ............................................................ 23

*United States v. Place*, 462 U.S. 696 (1983) ......................................................... 24

*United States v. Texas*, 599 U.S. 670 (2023) ................................................ *passim*

*W. Radio Servs. Co. v. Espy*, 79 F.3d 896 (9th Cir. 1996) ................................... 32

*Wilson v. Lynch*, 835 F.3d 1083 (9th Cir. 2016) .................................................. 31

*Wisconsin v. Yoder,* 406 U.S. 205 (1972) ...................................................... 18, 19

## Federal Statutes

5 U.S.C. § 701 .................................................................................................. 27, 28

5 U.S.C. § 704 ...................................................................................................30

6 U.S.C. § 101 .................................................................................................... 4

6 U.S.C. § 202 .................................................................................................. 28

8 U.S.C. § 1103 .................................................................................................. 3

8 U.S.C. § 1252 ............................................................................................... 3, 7

8 U.S.C. § 1357 ................................................................................................ 29

8 U.S.C. §§ 1221–31 ...................................................................................... 3, 22

8 U.S.C. § 1226 .................................................................................................. 3

8 U.S.C. § 1357 .................................................................................................. 3

42 U.S.C. § 2000bb-1 ...................................................................................... 17

## Federal Rules

Fed. R. Civ. P. 12 ......................................................................................... 1, 8, 9

Fed. R. Civ. P. 25 ............................................................................................... 1

## Other Authorities

Exec. Order No. 14159, *Protecting the American People Against Invasion*, 90 Fed.
    Reg. 8443 (Jan. 20, 2025)......................................................................... 14, 15

Immigration Reform and Control Act of 1986, Pub. L. No. 99-603, § 115(1), 100
    Stat. 3359, 3384 ............................................................................................ 22

Local Rule 7-1 .....................................................................................................1

## CERTIFICATE OF COMPLIANCE WITH LR 7-1

Counsel conferred but were unable to resolve this matter.  Plaintiffs oppose this motion.

## MOTION

Defendants United States Department of Homeland Security ("DHS"); Kristi Noem, in her official capacity as Secretary of DHS; United States Immigration and Customs Enforcement ("ICE"); Todd Lyons, in his official capacity as Acting Director of ICE; United States Customs and Border Protection ("CBP"); and Pete Flores, in his official capacity as Acting Commissioner of CBP[1] (collectively, "Defendants"), move to dismiss this action for lack of subject-matter jurisdiction and for failure to state a claim under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  This motion is based on the accompanying memorandum, the Declaration of Patrick J. Conti, and supporting exhibits.

## INTRODUCTION

On January 20, 2025, DHS issued new internal guidance advising immigration officers to exercise their "common sense" and "discretion" when conducting enforcement activities near sensitive locations such as places of worship.  Pursuant to this guidance, ICE issued a memorandum charging

---

[1] Rodney Scott was sworn in as the Commissioner of CBP last month. Commissioner Scott should be "automatically substituted as a party" for Pete Flores.  Fed. R. Civ. P. 25(d).

**Page 1**    **Defendants' Motion to Dismiss**

supervisory officials with the responsibility to make case-by-case determinations regarding whether, where, and when to conduct enforcement actions in or near sensitive locations.

Plaintiffs in this action seek an order from the Court declaring DHS's new guidance unlawful and requiring DHS to revert to its prior guidance. The prior guidance advised that immigration officers should avoid enforcement actions in or near sensitive locations but allowed such actions in exigent circumstances or with prior approval. Plaintiffs claim the new guidance may result in their locations being targeted for enforcement actions and their members no longer feel safe attending worship or other services. The complaint asserts claims under the Religious Freedom Restoration Act ("RFRA"), the First Amendment, and the Administrative Procedure Act ("APA").

The Court should dismiss the complaint in full. Plaintiffs lack standing to challenge internal DHS guidance advising immigration officers to use "commonsense" and "discretion" in deciding whether, where, and when to conduct enforcement actions, and the complaint fails to plausibly allege Plaintiffs' purported harms are caused by differences between the old guidance and the new guidance. The complaint also fails to state a claim for relief. The RFRA and First Amendment claims fail because internal guidance advising immigration officers to exercise discretion does not impose a substantial burden on Plaintiffs' exercise of religion or right to associate. The APA claim fails

**Page 2      Defendants' Motion to Dismiss**

because such guidance is committed to DHS's discretion by law and does not constitute final agency action from which legal consequences flow.

## BACKGROUND

**A.    Statutory Background**

"The Government of the United States has broad, undoubted power over the subject of immigration and the status of aliens." *Arizona v. United States*, 567 U.S. 387, 394 (2012).  Congress has assigned DHS with the responsibility to enforce the nation's immigration laws.  8 U.S.C. § 1103(a)(1).  These laws authorize DHS and its officers to interrogate, arrest, detain, and remove unlawfully present aliens.  *See id*. §§ 1226, 1357.

Congress has also restricted the authority of lower courts to enjoin immigration officers' operations to arrest and detain aliens.  Under 8 U.S.C. § 1252(f)(1), except in a case brought by "an individual alien" in removal proceedings, "no court (other than the Supreme Court) shall have jurisdiction or authority to enjoin or restrain the operation of the provisions of [8 U.S.C. §§ 1221–31]," which includes the "implementation and enforcement of the immigration laws governing the inspection, apprehension, examination, and removal of aliens."  *Garland v. Aleman Gonzalez*, 596 U.S. 543, 549–50 (2022).

///

///

///

**Page 3      Defendants' Motion to Dismiss**

**B.    DHS Internal Guidance Regarding Immigration Enforcement Actions in or Near Sensitive Locations**

Since at least 1993, DHS or its predecessor[2] has permitted immigration enforcement actions in or near sensitive locations, including places of worship, under exigent circumstances or with prior supervisor approval.  *See, e.g.*, Ex.[3] 1 (Memorandum from James A. Puleo, Acting Assoc. Comm'r, Immigration & Naturalizations Serv.*,* "Enforcement Actives at Schools, Places of Worship, or at funerals or other religious ceremonies" (May 17, 1993) ("Puleo Memorandum")); Ex. 2 (Memorandum from John Morton, Director, U.S. Immigration and Customs Enforcement (ICE), "Enforcement Actions at or Focused on Sensitive Locations" (Oct. 24, 2011) ("Morton Memorandum")).  As the Morton Memorandum explained, the agency's guidance was "not intended to categorically prohibit lawful enforcement operations" but instead was "meant to ensure that ICE officers and agents exercise sound judgment when enforcing federal law at or focused on sensitive locations."  Ex. 2 at 2.

In 2021, DHS updated its guidance regarding enforcement activities near sensitive locations.  Ex. 3 (Memorandum from Alejandro N. Mayorkas, Secretary of Homeland Security, "Guidelines for Enforcement Actions in or Near Protected Ares" (Oct. 27, 2021) ("2021 Guidance")).  Consistent with the Puleo

---

[2] Pursuant to the Homeland Security Act of 2002, DHS superseded Immigration and Naturalization Service.  *See* 6 U.S.C. § 101 *et seq.*

[3] Unless otherwise specified, "Ex." Refers to exhibits attached to the Declaration of Patrick J. Conti in Support of Defendants' Motion to Dismiss.

**Page 4    Defendants' Motion to Dismiss**

Memorandum and the Morton Memorandum, the 2021 Guidance recognized that
there were circumstances "under which an enforcement action" in or near a
sensitive location "needs to be taken," including "exigent circumstances." *Id.* at
3–4. And absent exigent circumstances, immigration officers could "seek prior
approval from their Agency's headquarters, or as" otherwise delegated. *Id.* at 4.
The guidance included a non-exhaustive list of circumstances that would justify
enforcement actions near a sensitive location, but the list included "only
examples," was "not complete," and stressed that "the exercise of judgment is
required." *Id.* The 2021 Guidance recognized that the exercise of judgment is
required when determining what was "near" a sensitive location and whether
circumstances were exigent. *Id.* at 3–4. The 2021 Guidance also expressly
stated that it "does not limit an agency's or employee's statutory authority" and
that the guidance "is not intended to, does not, and may not be relied upon to
create any right or benefit, substantive or procedural, enforceable at law by any
party in any … matter." *Id.* at 4–5.

On January 20, 2025, DHS issued superseding guidance for enforcement
actions in or near sensitive locations. Ex. 4 (Memorandum from Benjamine C.
Huffman, Acting Secretary, DHS, "Enforcement Actions in or Near Protected
Areas" (Jan. 20, 2025) ("Huffman Memorandum")). The new guidance
recognizes that immigration officers "frequently apply enforcement discretion to
balance a variety of interests." *Id.* at 1. "Going forward, law enforcement
officers should continue to use that discretion along with a healthy dose of

common sense" when considering enforcement actions in or near sensitive

locations.  *Id.*  While the new guidance does not create "bright line rules

regarding where … immigrations laws are permitted to be enforced," it

recognized that component heads "may wish to issue further guidance to assist

officers in exercising appropriate enforcement discretion."  *Id.*

On January 31, 2025, ICE issued follow-on guidance charging "Assistant

Field Office Directors (AFODs) and Assistant Special Agents in Charge (ASACs)

with responsibility for making case-by-case determinations regarding whether,

where, and when to conduct an immigration enforcement action in or near a

protected area."  Ex. 5 (Memorandum from Caleb Vitello, Acting Director, ICE,

"Common Sense Enforcement Actions in or Near Protected Areas" (Jan. 31,

2025) ("Vitello Memorandum")) at 2.  The Vitello Memorandum specifies that

AFODs and ASACs "may provide authorization for such actions either verbally

or in writing."  *Id.*  Both the Huffman Memorandum and the Vitello

Memorandum (together, the "2025 Guidance") specify that they do not create

any legally enforceable rights or benefits.  Ex. 4 at 1; Ex. 5 at 2.

## C.    Factual and Procedural Background

On April 28, 2025, Plaintiffs – a coalition of churches, a Latinx

organization, and an interfaith organization – filed this lawsuit seeking

declaratory and injunctive relief.  Compl. ¶ 9, Prayer for Relief.  Plaintiffs allege

the 2025 Guidance's rescission of the 2021 Guidance has caused widespread fear

of potential enforcement actions at their locations, resulting in a decline in

attendance and people seeking their services. *Id.* ¶ 48. Plaintiffs further allege they have diverted resources to keep their locations safe from potential immigration enforcement actions. *Id.* ¶ 49. Plaintiffs claim the change from the 2021 Guidance to the 2025 Guidance violates RFRA and their First Amendment right of expressive association. They also claim the 2025 Guidance is arbitrary and capricious in violation of the APA. *Id.* ¶¶ 107–36.

## D.    Related Lawsuits

The 2025 Guidance has been challenged in three other lawsuits. In the first, *Philadelphia Yearly Meeting of Religious Society of Friends v. U.S. Department of Homeland Security*, several religious groups similarly alleged violations of RFRA, the First Amendment, and APA based on the 2025 Guidance. 767 F. Supp. 3d 293, 304 (D. Md. 2025). On February 24, 2025, the court granted plaintiffs' motion for a preliminary injunction, after finding they likely had standing and had made a sufficient showing on their RFRA and First Amendment claims. *See id.* at 319, 328, 333. Consistent with 8 U.S.C. § 1252(f)(1), the court refused to enjoin "DHS's ability to engage in arrests pursuant to an administrative warrant." *Id.* at 320. Defendants' motion to dismiss is currently pending in the case.

In the second similar case, *Denver Public Schools v. Noem*, No. 1:25-cv-00474 (D. Colo.), a public school system alleged that the 2025 Guidance violated the APA and moved for preliminary relief. On March 7, 2025, the court denied the motion for lack of standing. *See* Ex. 6 (Mar. 7, 2025 Hearing Tr.) at 55–56.

**Page 7    Defendants' Motion to Dismiss**

On June 9, 2025, the court dismissed the case based on the parties' stipulation. D. Colo., Case No. 1:25-cv-00474-DDD-KAS, ECF 59.

In the third related case, *Mennonite Church USA v. U.S. Department of Homeland Security*, twenty-seven faith communities alleged violations of RFRA, the First Amendment, and APA based on the 2025 Guidance. No. 25-cv-00403 (DLF), __ F. Supp. 3d __, 2025 WL 1094223, at *1 (D.D.C. Apr. 11, 2025). On April 11, 2025, the court denied plaintiffs' motion for a preliminary injunction to enjoin the 2025 Guidance for lack of standing. *Id.* at *8. The court's denial of a preliminary injunction is currently on appeal before the D.C. Circuit (case no. 25-5209).

## STANDARD OF REVIEW

"Federal courts are courts of limited jurisdiction" and an action is presumed to lie "outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). When jurisdiction is challenged under Federal Rule of Civil Procedure 12(b)(1), the plaintiff bears the burden of establishing jurisdiction. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). A motion to dismiss under Rule 12(b)(1) may be facial or factual. *Id.* A facial challenge accepts the complaint's allegations but contests they are sufficient to invoke federal jurisdiction. *Id.* In a factual challenge, the truthfulness of the allegations is disputed, and the Court may "hear evidence regarding jurisdiction and resolv[e] factual disputes where necessary." *Robinson v. United States*, 586 F.3d 683, 685 (9th Cir. 2009) (citation omitted). When a

Page 8        Defendants' Motion to Dismiss

court "lacks subject-matter jurisdiction, the court must dismiss the complaint." *Pistor v. Garcia*, 791 F.3d 1104, 1111 (9th Cir. 2015) (citation omitted).

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. A complaint may be dismissed when there is "either a lack of a cognizable theory or the absence of sufficient facts alleged under a cognizable legal claim." *Ctr. for Cmty. Action & Envtl. Justice v. BNSF R. Co.*, 764 F.3d 1019, 1023 (9th Cir. 2014) (quoting *Hinds Inves., L.P. v. Angioli*, 654 F.3d 846, 850 (9th Cir. 2011)).

## ARGUMENT

### A.    Plaintiffs Lack Article III Standing

"No principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 341 (2006) (internal quotation marks omitted). This constitutional limitation requires plaintiffs to demonstrate they have standing to sue so that courts do not operate as an open forum for "general complaints about the way in which the government goes about its business." *Allen v. Wright*, 468 U.S. 737,

760 (1984). "To have standing under Article III, a plaintiff must have (1) a concrete and particularized injury that (2) is caused by the challenged conduct and (3) is likely redressable by a favorable judicial decision." *Juliana v. United States*, 947 F.3d 1159, 1168 (9th Cir. 2020).

Plaintiffs allege they have been injured because the 2025 Guidance has chilled participation in their services and has financially harmed them. *See, e.g.*, Compl. ¶¶ 56, 96, 101. As articulated below, Plaintiffs' alleged personal stake in this litigation fails to satisfy their burden to establish Article III standing and the Court thus lacks jurisdiction over this action.

### 1.    No cognizable injury

To support standing, an injury must be "concrete, particularized, and actual or imminent." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (quoting *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 149 (2010)). When the alleged injury arises from an "exercise of governmental power" that is "regulatory, proscriptive, or compulsory in nature," the "complainant" must be "presently or prospectively subject to the regulations, proscriptions, or compulsions" at issue. *Laird v. Tatum*, 408 U.S. 1, 11 (1972). When the "complainant" is subject to the challenged exercise of government power, the "chill itself" that arises from past or immediately threatened exercise of governmental power does not constitute a concrete, particularized injury. *Id.*; *Clapper*, 568 U.S. at 419 (rejecting standing based on the chilling effect of a

policy that "does not regulate, constrain, or compel any action on [the plaintiffs'] part").

Plaintiffs lack a cognizable injury. The 2025 Guidance does not regulate, constrain, or compel any action – let alone command or prohibit *Plaintiffs'* conduct. Rather, the guidance merely instructs *immigration enforcement officers* to exercise *their discretion* and use common sense when contemplating enforcement actions in or near sensitive locations. The 2025 Guidance thus "*authorizes*–but does not *mandate* or *direct*–" the immigration enforcement actions Plaintiffs and their members fear. *Clapper*, 568 U.S. at 412 (emphases in original).

Indeed, the complaint contains no allegations that Plaintiffs have received any threat of immigration enforcement or that they have otherwise been "singled out or uniquely targeted by the ... government for [enforcement]." *Mennonite Church USA*, 2025 WL 1094223, at *4 (quoting *Ord v. D.C.*, 587 F.3d 1136, 1140 (D.C. Cir. 2009)). Plaintiffs thus seek pre-enforcement review of the 2025 Guidance, but such review is warranted only "under circumstances that render the threatened enforcement sufficiently imminent." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014). Plaintiffs cannot meet that standard justifying pre-enforcement review. *See Mennonite Church USA*, 2025 WL 1094223, at *5 (finding religious organizations challenging the 2025 Guidance "lack standing to assert a pre-enforcement challenge").

**Page 11    Defendants' Motion to Dismiss**

Plaintiffs' allegations that they have incurred costs and diverted resources to address their members' fears of future immigration enforcement (*see, e.g.*, Compl. ¶ 101) do not help. As the Supreme Court has explained, parties cannot "manufacture" standing by diverting resources to address "their fears of hypothetical future harm," even if those actions are "reasonable." *Clapper*, 568 U.S. at 416; *Mennonite Church USA*, 2025 WL 1094223, at *8 (finding no standing based on costs incurred to protect against "hypothetical" future immigration enforcement actions).

*United States v. Texas*, 599 U.S. 670 (2023), highlights the lack of a cognizable injury in this case. In *Texas*, the Supreme Court held that parties challenging immigration enforcement priorities lack an Article III injury because such suits "run up against the Executive's Article II authority to enforce federal law," and "courts generally lack meaningful standards for assessing the propriety of enforcement choices" given the Executive Branch's enforcement discretion to weigh "resource constraints and regularly changing public-safety and public-welfare needs" when devising its immigration enforcement policy. *Id.* at 678–80. Plaintiffs' lawsuit, which challenges Defendants' discretionary approach to when and where to direct its immigration enforcement resources, likewise fails for a lack of a cognizable injury.

Accordingly, Plaintiffs' and their members' alleged fears of future, discretionary immigration enforcement actions "are necessarily conjectural" and do not constitute a cognizable injury. *Clapper*, 568 U.S. at 412.[4]

### 2. The alleged injury is not traceable to the 2025 Guidance

Standing further requires Plaintiffs to show that their cognizable injury "is fairly traceable to the challenged action." *Clapper*, 568 U.S. at 409. Even if Plaintiffs alleged a cognizable injury, they fail to plausibly allege the 2025 Guidance caused that injury.

"[W]here a causal relation between injury and challenged action depends upon the decision of an independent third party" – here, Plaintiffs' members' decisions to attend services – standing is "substantially more difficult to establish." *California v. Texas*, 593 U.S. 659, 675 (2021) (citation and internal quotation marks omitted). There must be evidence that the injury arises from

---

[4] In *Presbyterian Church (U.S.A.) v. United States*, the Ninth Circuit held that churches' allegations of decreased church attendance constituted concrete harm. 870 F.2d 518, 521–22 (9th Cir. 1989). But the allegations in that case are distinguishable. There, the churches alleged declined attendance after immigration officers had repeatedly "entered the churches wearing 'body bugs' and surreptitiously recorded church services" over a nine-month period. *Id.* Unlike in that case, plaintiffs here have not alleged any immigration officer has entered their locations, let alone conducted an extended surveillance operation targeting their members. Nor have Plaintiffs alleged that the 2025 Guidance – rather than the administration's public announcements of broader immigration enforcement – has caused the alleged decline in attendance. *See Al-Owhali v. Ashcroft*, 279 F. Supp. 2d 13, 27 (D.D.C. 2003) (distinguishing *Presbyterian Church*); *Mennonite Church USA*, 2025 WL 1094223, at *5 n.6 (same).

the "predictable effect of Government action on the decisions of third parties."

*Dep't of Com. v. New York*, 588 U.S. 752, 768 (2019).

This is especially difficult to show where, as here, third parties' subjective fear is the causal link between the possible government action and the injury. In *Clapper*, for instance, plaintiffs' injury stemmed from their foreign contacts who "might be disinclined to speak with them due to a fear of surveillance." 568 U.S. at 417 n.7.  After the Supreme Court expressed "reluctance to endorse standing theories that rest on speculation about the decisions of independent actors," *id.* at 414, the Supreme Court ruled the injuries were not "fairly traceable" to the government action "because they are based on third parties' subjective fear of surveillance."  *Id.* at 417 n.7.

Plaintiffs fail to allege a concrete injury fairly traceable to the 2025 Guidance.  Specifically, the complaint fails to allege that the 2025 Guidance – rather than the administration's broader prioritization of immigration enforcement – caused the third parties' subjective fear resulting in Plaintiffs' alleged injury.

The new administration has prioritized enforcement of immigration laws against "all inadmissible and removable aliens."  Exec. Order No. 14159, *Protecting the American People Against Invasion*, 90 Fed. Reg. 8443 (Jan. 20, 2025).  Plaintiffs acknowledge examples of this new prioritization. *See, e.g.*, Compl. ¶ 5 (referencing highly publicized immigration enforcement actions that did not occur near sensitive locations).  And they allege, consistent with this

**Page 14    Defendants' Motion to Dismiss**

broader immigration enforcement, that "[m]any [noncitizens] do not feel safe anywhere but their own homes." *Id.* ¶ 91. Plaintiffs' members are thus "staying home to avoid encountering ICE in their own neighborhoods, not because churches or synagogues are locations of elevated risk." *Mennonite Church USA*, 2025 WL 1094223, at *6. Accordingly, Plaintiffs have not shown their alleged injuries are fairly traceable to the 2025 Guidance instead of a predictable response by third parties to the Executive Branch's highly publicized prioritization of widespread immigration enforcement.

Even if there was a clear link between the 2025 Guidance and Plaintiffs' members staying at home, that link "is too speculative or otherwise too attenuated to establish standing." *Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 390 (2024). In *Hippocratic Medicine*, the Supreme Court indicated teachers in border states would not have standing "to challenge allegedly lax immigration policies that lead to overcrowded classrooms." *Id.* at 392. Otherwise, standing would be "limitless." *Id.*

The same is true here. If Plaintiffs' alleged injuries are deemed fairly traceable to the 2025 Guidance, which does not target or otherwise constrain Plaintiffs' conduct, "virtually every citizen" would have standing to "challenge virtually every government action that they do not like." *Id.* The Supreme Court has "consistently rejected" that path "as flatly inconsistent with Article III." *Id.* The Court should likewise reject Plaintiffs' attenuated link between their alleged injuries and the 2025 Guidance.

**Page 15    Defendants' Motion to Dismiss**

### 3.    Nor would a favorable decision redress the alleged injury

Plaintiffs seek a declaration that the 2025 Guidance is unlawful and an order enjoining the government from taking "any immigration enforcement actions that are not authorized in accordance with the 2021 Mayorkas Memo." Compl. ¶¶ 138, 141.  Plaintiffs have not alleged and cannot show that their "injury likely would be redressed by the requested judicial relief."  *Hippocratic Med.*, 602 U.S. at 380.

First, the 2021 Guidance does not bar enforcement actions in or near sensitive locations.  It simply requires "prior approval from … headquarters" or from a supervisor the agency may "otherwise delegate."  Ex. 3 at 4.  Assuming *arguendo* this meaningfully differs from the 2025 Guidance, a return to this prior guidance would not bar enforcement actions in or near Plaintiffs' locations "without reverting to the enforcement priorities of the prior administration" too. *Mennonite Church USA*, 2025 WL 1094223, at *7 (citation and internal quotation marks omitted).  Without a change to the administration's enforcement priorities, Plaintiffs' requested relief "would not rectify the alleged attendance declines" as enforcement actions in or near Plaintiffs' locations would not be barred.  *Id.*

Relatedly, Plaintiffs have not plausibly alleged their sought relief would remedy their attendance and resource concerns.  When, as here, the plaintiff is not the object of the challenged government action, "standing … is ordinarily 'substantially more difficult' to establish."  *Lujan v. Defs. of Wildlife*, 504 U.S.

555, 562 (1992) (quoting *Allen*, 468 U.S. at 758). This is because redress of the injury in that situation involves "unfettered choices made by independent actors not before the courts and whose exercise of broad and legitimate discretion the courts cannot presume either to control or to predict." *Id.* (quoting *ASARCO Inc. v. Kadish*, 490 U.S. 605, 615 (1989)). Here, Plaintiffs have not plausibly alleged that a return to the 2021 Guidance, which does not bar enforcement actions or create any enforceable rights, would assuage their members' subjective fears despite the new administration's highly publicized prioritization of widespread immigration enforcement. As such, Plaintiffs' sought relief will not redress their alleged injury without "restraining executive discretion more broadly, which the Court cannot do." *Mennonite Church USA*, 2025 WL 1094223, at *7.

## B.    The Complaint Fails to State a RFRA Claim

RFRA prohibits the federal government from substantially burdening a person's exercise of religion unless the government demonstrates that the burden furthers a compelling government interest and is the least restrictive means of furthering that interest. 42 U.S.C. § 2000bb-1; *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 694–95 (2014).

Plaintiffs claim the 2025 Guidance violates RFRA. They allege the new guidance deters "membership, attendance, and participation in religious services and related events." Compl. ¶ 122. They further allege the exercise of their religion has been burdened by having to prioritize "maintaining the safety of their sanctuaries" over "carrying out religious ceremonies and providing pastoral

**Page 17**    **Defendants' Motion to Dismiss**

care." *Id.* Plaintiffs have not, however, plausibly alleged how the 2025 Guidance substantially burdens their religious beliefs. Even if they did, the new guidance is narrowly tailored to further compelling governmental interests.

### 1. No substantial burden to religious exercise

RFRA does not define "substantial burden." *Apache Stronghold v. United States*, 101 F.4th 1036, 1058 (9th Cir. 2024). Courts look to First Amendment caselaw predating *Employment Division v. Smith*, 494 U.S. 872 (1990), to construe the term.[5] Under pre-*Smith* caselaw, the government imposes a substantial burden "when individuals are forced to choose between following the tenets of their religion and receiving a governmental benefit … or coerced to act contrary to their religious beliefs by the threat of civil or criminal sanctions." *Navajo Nation v. U.S. Forest Serv.*, 535 F.3d 1058, 1070 (9th Cir. 2008), *overruled in part by Apache Stronghold*, 101 F.4th 1036 (holding a "substantial burden" may also include "preventing access to religious exercise"). This requires a showing that the federal government is "either requiring or prohibiting" a religious exercise. *Doe v. Irwin*, 615 F.2d 1162, 1168 (6th Cir. 1980) (collecting cases).

For instance, in *Wisconsin v. Yoder*, Amish parents were convicted for violating Wisconsin's compulsory school attendance law. 406 U.S. 205, 207–08 (1972). The Supreme Court found that the requirement that the parents send

---

[5] Congress enacted RFRA "in direct response" to *Smith*. *City of Boerne v. Flores*, 521 U.S. 507, 512 (1997).

their children to school "affirmatively compels them, under threat of criminal sanction, to perform acts undeniably at odds with fundamental tenets of their religious beliefs." *Id.* at 218. The Court reversed the convictions, holding the Wisconsin law "unduly burden[ed]" the exercise of their religion. *Id.* at 220 (citing *Sherbert v. Verner*, 374 U.S. 398 (1963)). As the Third Circuit has explained, "[c]ases finding a substantial burden under RFRA have consistently done so" where the burden that interfered with the plaintiff's religious exercise is "directly implicated by federal action." *Real Alternatives, Inc. v. Sec'y Dep't of Health & Hum. Servs.*, 867 F.3d 338, 360 (3d Cir. 2017) (collecting cases).

Unlike the criminal sanction in *Yoder*, the 2025 Guidance neither compels nor prohibits Plaintiffs' religious exercise. Indeed, the guidance contains no commands or prohibitions directed at Plaintiffs. Rather, it simply instructs immigration enforcement officers to exercise their "discretion" and "common sense" in deciding whether, where, and when to enforce federal immigration law. Ex. 4. Nor does the 2025 Guidance require enforcement officers to enforce federal immigration law in or near sensitive locations. It merely streamlines the supervisory approval process for such activity. Ex. 5 at 2.

Similarly, the 2025 Guidance does not indirectly coerce Plaintiffs to modify their behavior or violate their religious beliefs. In *Sherbert*, a member of the Seventh-day Adventist Church was denied unemployment benefits due to her conscientious objection to working on Saturdays. 374 U.S. at 400. The Supreme Court held that the claimant's "ineligibility for [unemployment]

**Page 19      Defendants' Motion to Dismiss**

benefits derive[d] solely from the practice of her religion" and thus indirectly coerced her to choose between the tenets of her faith or forfeiting government benefits. *Id.* at 403–04. And in *Hobby Lobby*, a federal mandate that certain employers provide health insurance coverage for contraception or face monetary fines constituted a substantial burden on plaintiffs' exercise of religion because the mandate forced plaintiffs to "engage in conduct that seriously violates their religious beliefs" or face "severe" economic consequences. 573 U.S. at 720–21. But to find indirect coercion like in *Sherbert* and *Hobby Lobby*, the "crucial word" is "prohibit." *Lyng v. Nw. Indian Cemetery Protective Ass'n*, 485 U.S. 439, 451 (1988). Unlike the government actions in *Sherbert* and *Hobby Lobby*, the 2025 Guidance does not prohibit Plaintiffs from exercising their religion by pitting their faith against a government benefit or penalty.

The 2025 Guidance, which allows – but does not mandate – enforcement actions, does not prohibit religious exercise. RFRA, like the Free Exercise Clause, "simply cannot be understood to require the Government to conduct its own internal affairs in ways that comport with the religious beliefs of particularized citizens." *Bowen v Roy*, 476 U.S. 693, 699 (1986) (plurality op.). This is especially true considering the Executive Branch "retains discretion over whether to remove a noncitizen from the United States." *Texas*, 599 U.S. at 679. And how the Executive Branch exercises that discretion is an internal matter not suitable for judicial review as the Executive Branch "must constantly react

and adjust to the ever-shifting public-safety and public-welfare needs of the American people." *Id.* at 680.

Further, any coercive link between the 2025 Guidance and Plaintiffs' alleged declines in attendance "is too attenuated to create a substantial burden on petitioners' religious exercise." *Fernandez v. Mukasey*, 520 F.3d 965, 966 (9th Cir. 2008) (per curiam). To start, the link rests on speculation that immigration enforcement officers may in the future decide to exercise their discretion to carry out an enforcement action in or near Plaintiffs' locations. Additionally, the link between the 2025 Guidance and Plaintiffs' alleged religious burdens turns on the "independent decisions of third part[ies]." *Iowaska Church of Healing v. Werfel*, 105 F.4th 402, 413 (D.C. Cir. 2024). Given this attenuated link, it is too speculative that any burden on Plaintiffs' religious exercise is directly implicated by the 2025 Guidance and not for some other reason, including the broader policy prioritizing immigration enforcement.

### 2. Even if the 2025 Guidance imposed a substantial burden, it furthers compelling government interests in the least restrictive means

Uniform enforcement of the nation's immigration laws is critically important to national security and public safety. "The Supreme Court has recognized that the public interest in enforcement of the immigration laws is significant." *Blackie's House of Beef, Inc. v. Castillo*, 659 F.2d 1211, 1221 (D.C. Cir. 1981) (citing cases); *see also Nat'l Treasury Emps. Union v. Von Raab*, 489 U.S. 656, 672 (1989) ("[T]he Government[ ha]s compelling interests in safety and

**Page 21      Defendants' Motion to Dismiss**

in the integrity of our borders."). Congress delegated significant authority to DHS to administer and enforce immigration laws without limiting the Executive's authority to conduct enforcement actions in or near places of worship or similar locations. *See, e.g.*, 8 U.S.C. §§ 1226, 1231, 1357; *see also Arizona*, 567 U.S. at 396 ("A principal feature of the removal system is the broad discretion exercised by immigration officials."). "The continued presence of an alien lawfully deemed removable undermines the streamlined removal proceedings [Congress] established, and permit[s] and prolong[s] a continuing violation of United States law." *Nken v. Holder*, 556 U.S. 418, 436 (2009) (cleaned up).

The imposition of heightened procedural requirements for enforcement actions beyond what Congress provided in the Immigration and Nationality Act ("INA") would create a hodgepodge of immigration enforcement sanctuaries with different rules for the enforcement of generally applicable laws. Such a scheme would undermine Congress' instruction that "the immigration laws of the United States should be enforced vigorously and *uniformly*." Immigration Reform and Control Act of 1986, Pub. L. No. 99-603, § 115(1), 100 Stat. 3359, 3384 (emphasis added). The Supreme Court has recognized "that there may be instances in which a need for uniformity precludes the recognition of exceptions to generally applicable laws under RFRA." *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 436 (2006). This is such a case as both Congress and the Supreme Court have emphasized the need for uniform application and

**Page 22    Defendants' Motion to Dismiss**

enforcement of immigration laws. *See United States v. Lee*, 455 U.S. 252, 260 (1982) (holding that "the broad public interest in maintaining a sound tax system is of such a high order, religious belief in conflict with the payment of taxes affords no basis for resisting the tax"); *Iowaska Church of Healing*, 105 F.4th at 416 ("[T]he IRS Decision and the attendant tax regulatory scheme could be justified by a compelling government interest that necessitates uniform application.").[6] Defendants thus have a compelling interest in "denying an exemption to these specific plaintiffs" from the uniform enforcement of the nation's immigration laws. *Singh v. Berger*, 56 F.4th 88, 99 (D.C. Cir. 2022) (internal quotation marks and citation omitted); *cf. United States v. Grady*, 18 F.4th 1275, 1287 (11th Cir. 2021) ("RFRA is not a 'get out of jail free card,' shielding [individuals] from criminal liability ….").

The 2025 Guidance is narrowly tailored to furthering the Defendants' compelling interests. The guidance acknowledges that "officers frequently apply enforcement discretion to balance a variety of interests" when conducting enforcement actions, "including the degree to which any law enforcement action occurs in a sensitive location." Ex. 4 at 1. And as the Supreme Court has recognized, given "inevitable resource constraints and regularly changing public-

---

[6] By contrast, the Supreme Court did not recognize the uniformity interest in *Gonzales*, a case that challenged a ban to a hallucinogenic tea used in religious ceremonies, but that was because of "the longstanding exemption from the Controlled Substances Act for religious use of peyote, and the fact that the very reason Congress enacted RFRA was to respond to a decision denying a claimed right to sacramental use of a controlled substance." *Gonzales*, 546 U.S. at 436–37.

**Page 23    Defendants' Motion to Dismiss**

safety and public-welfare needs, the Executive Branch must balance many factors when designing arrest and prosecution policies." *Texas*, 599 U.S. at 680. The 2025 Guidance allowing officers to exercise their discretion is narrowly tailored to further the "vigorous" enforcement program that Congress contemplated "in passing the [INA]." *Castillo*, 659 F.2d at 1219, 1221. At the same time, it is the least restrictive means to further the well-established principle that law enforcement officers have broad discretion, within the bounds of reasonableness, "to graduate their responses to the demands of any particular situation." *United States v. Place*, 462 U.S. 696, 709 n.10 (1983). To hold otherwise would conflict with the Supreme Court's warning that courts avoid "rigid" limitations on law enforcement officers by imposing "a clear rule to guide their conduct." *Id.*

## C.    The Complaint Fails to a State a First Amendment Claim

"[I]mplicit in the right to engage in activities protected by the First Amendment" is "a corresponding right to associate with others in pursuit of a wide variety of political, social, economic, educational, religious, and cultural ends." *Roberts v. U.S. Jaycees*, 468 U.S. 609, 622 (1984) (collecting cases). The right of expressive association, however, "is not absolute." *Boy Scouts of Am. v. Dale*, 530 U.S. 640, 648 (2000). Government action only rises to the level of unconstitutional when it is direct and "significantly burden[s]" a party's expressive associational rights. *Id.* at 653. The Supreme Court has held the following types of government action to significantly burden the right to

**Page 24        Defendants' Motion to Dismiss**

associate: penalties or loss of a benefit based on membership in a disfavored group, *Roberts*, 468 U.S. at 622–23; requiring an unwanted person be admitted into a group, *Dale*, 530 U.S. at 648 (2000); and "disclosure of membership lists for groups seeking anonymity," *Rumsfeld v. F. for Acad. & Institutional Rts., Inc.*, 547 U.S. 47, 69 (2006).

Even if governmental action significantly burdens the right to associate with others, the action does not violate the First Amendment if the action was taken "to serve compelling state interests, unrelated to the suppression of ideas, that cannot be achieved through means significantly less restrictive of associational freedoms." *Roberts*, 468 U.S. 609 at 623.

### 1.    No significant burden to the right to associate

Plaintiffs allege the 2025 Guidance "chills Plaintiffs' and their members' … ability to associate" in violation of their First Amendment rights.  Compl. ¶ 116.  The 2025 Guidance, which allows immigration officers to exercise discretion and obtain supervisory approval for enforcement actions in or near sensitive locations, falls short of government action that directly and significantly burdens Plaintiffs' right to associate.

The challenged guidance does not regulate, constrain, or compel Plaintiffs to modify their behavior.  *See supra* at 5–6, 11.  Nor does it require immigration officers to carry out any enforcement actions – let alone in or near Plaintiffs' places of worship.  Further, the guidance does not directly regulate Plaintiffs, or target their members based on their beliefs or attendance of Plaintiffs' services.

And it does not bar Plaintiffs' members from associating.  Simply put, the challenged action is entirely unrelated to the members' religious exercise or status as members.

The alleged burden on association here instead is based on the attenuated, subjective fear that immigration enforcement officers may decide to exercise their discretion to conduct enforcement actions in or near Plaintiffs' locations at some future date.  But allegations of such subjective chill "are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm." *Laird*, 408 U.S. at 14.

A quick comparison between the 2021 Guidance, which Plaintiffs do not challenge as unconstitutional, and the 2025 Guidance, which they do, highlights the implausibility of Plaintiffs' allegations that the 2025 Guidance constitutes a direct and significant infringement of their right to associate.  The 2021 Guidance provides "no bright-line definition of what constitutes 'near'" a place of worship, directing officers to simply use their "exercise of judgment."  Ex. 3 at 3. That Guidance also allows immigration officers to enter places of worship with "prior approval from their Agency's headquarters" or from a supervisor the agency "otherwise delegate[s]." *Id.* at 4.  The 2025 Guidance similarly allows officers to exercise their discretion on where to conduct enforcement actions and to seek prior verbal or written approval for enforcement actions in or near places of worship.  Ex. 5 at 2.  At the same time, neither guidance creates any legally enforceable rights.  Even assuming that there has been an alleged chill,

**Page 26**    **Defendants' Motion to Dismiss**

Plaintiffs fail to plausibly allege that the purported chill is based on any meaningful difference between the 2021 Guidance and the 2025 Guidance, instead of the well-publicized change of enforcement priorities from one administration to the next.

### 2. The 2025 Guidance furthers compelling government interests through narrowly tailored means

Even if Plaintiffs plausibly alleged a direct and significant burden on their right to associate, the Court should still dismiss the claim because the 2025 Guidance serves the compelling government interest, as discussed above, in the enforcement of the nation's immigration laws and is the least restrictive means to further that interest. *See supra* at 21–24.

## D. The Court Lacks Jurisdiction over the APA Claim

### 1. The 2025 Guidance to immigration enforcement is committed to agency discretion

The APA prohibits judicial review when "the agency action is committed to agency discretion by law." 5 U.S.C. § 701(a)(2). The APA may bar judicial review "even where Congress has not affirmatively precluded review." *Heckler v. Chaney*, 470 U.S. 821, 830 (1985). This happens when the "statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion," leaving the court with "no law to apply." *Id.*

"Congress may limit an agency's exercise of enforcement power if it wishes," but only when "it has indicated an intent to circumscribe agency enforcement discretion, and has provided meaningful standards for defining the

limits of that discretion," is there "law to apply" under § 701(a)(2). *Id.* at 833–34.
Decisions are "general[ly] unsuitabl[e]" for judicial review when they require "a
complicated balancing of a number of factors which are peculiarly within
[agency] expertise" or involve how best to spend "agency resources," including
whether the agency "is likely to succeed if it acts" and "whether the particular
enforcement action requested best fits the agency's overall policies." *Id.* at 831.
"The agency is far better equipped than the courts to deal with the many
variables involved in the proper ordering of its priorities." *Id.* at 831–32.

Courts may also consider whether "a decision has traditionally been
'committed to agency discretion' …." *Id.* at 832. Enforcement decisions
traditionally involve considerable agency discretion. *See, e.g.*, *Texas*, 599 U.S. at
680 ("[T]he Executive Branch must balance many factors when devising arrest
and prosecution policies."); *Go Leasing, Inc. v. Nat'l Transp. Safety Bd.*, 800 F.2d
1514, 1523 (9th Cir. 1986) ("[T]he Administrator need not promulgate rules
constraining his discretion as to when to employ a particular statutory
enforcement action.").

The 2025 Guidance, which provides internal guidance to immigration
enforcement officers, is committed to agency discretion. Starting with the
statutory scheme, the INA and other statutes grant immigration officers broad
discretion in carrying out immigration laws. *See* 6 U.S.C. § 202(5) (charging
DHS with "[e]stablishing national immigration enforcement policies and
priorities"); *Arizona*, 567 U.S. at 396 ("A principal feature of the [congressionally

established] removal system is the broad discretion exercised by immigration

officials."). Nor did Congress "limit [the] agency's exercise of enforcement

power," "either by setting substantive priorities, or by otherwise circumscribing

[the] agency's power" to conduct immigration enforcement actions in or near

Plaintiffs' locations. *Heckler*, 470 U.S. at 833.[7] Congress has not provided any

"law to apply" with respect to internal guidance on location-based enforcement

actions relevant to this case. At the same time, internal guidance on

immigration enforcement actions in or near sensitive locations requires "a

complicated balancing of a number of factors" peculiarly within DHS's expertise.

*Id.* at 831; *Texas*, 599 U.S. at 680 ("[T]he Executive Branch must balance many

factors when devising arrest and prosecution policies."). Accordingly, the 2025

Guidance is committed to agency discretion by law and not reviewable under the

APA.

> **2.    No reviewable final agency action**

Even if the challenged guidance was not committed to agency discretion,

the claim would still fail for lack of final agency action.

The APA provides a limited waiver of the government's sovereign

immunity for "final agency action for which there is no other adequate remedy in

---

[7] Congress has limited certain enforcement actions at farms. *See* 8 U.S.C. § 1357(e). But Congress has not imposed any location-based restrictions on immigration officers' general arrest and detention authority in or near places of worship or similar locations.

**Page 29    Defendants' Motion to Dismiss**

a court." *Gallo Cattle Co. v. U.S. Dep't of Agric.*, 159 F.3d 1194, 1198 (9th Cir. 1998) (quoting 5 U.S.C. § 704). "Section 704 reflects a congressional policy against premature judicial intervention into the administrative process, and in favor of courts resolving only disputes with concrete legal stakes." *Inst. for Fisheries Res. v. Hahn*, 424 F. Supp. 3d 740, 747 (N.D. Cal. 2019).

"As a general matter, two conditions must be satisfied for agency action to be 'final'." *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997). First, "the action must mark the 'consummation' of the agency's decisionmaking process," and "must not be of a merely tentative or interlocutory nature." *Id.* (citation omitted). Second, "the action must be one by which 'rights or obligations have been determined,' or from which 'legal consequences will flow.'" *Id.* at 178 (citation omitted). Neither the 2021 nor the 2025 Guidance meet this second component of reviewable final agency action because neither carries the force and effect of law.

In an APA challenge to internal guidance like this one, "the finality inquiry is often framed as the question of whether the challenged action is best understood as a non-binding action, like a policy statement or interpretive rule," and thus unreviewable under the APA, "or a binding legislative rule," which carries the force and effect of law. *Inst. for Fisheries Res.*, 424 F. Supp. 3d at 748 (quoting *Ass'n of Flight Attendants-CWA, AFL-CIO v. Huerta*, 785 F.3d 710, 716 (D.C. Cir. 2015)). A non-binding policy statement simply "explains how the agency will enforce a statute or regulation—in other words, how it will exercise

**Page 30     Defendants' Motion to Dismiss**

its broad enforcement discretion … under some extant statute or rule." *Ass'n of Flight Attendants-CWA*, 785 F.3d at 716 (quoting *Nat'l Mining Ass'n v. McCarthy*, 758 F.3d 243, 252 (D.C. Cir. 2014)). By contrast, agency guidance rises to the level of a legislative rule with the "force of law" in three circumstances: "(1) when, in the absence of the rule, there would not be an adequate legislative basis for enforcement action; (2) when the agency has explicitly invoked its general legislative authority; or (3) when the rule effectively amends a prior legislative rule." *Wilson v. Lynch*, 835 F.3d 1083, 1099 (9th Cir. 2016) (internal quotation marks omitted).

Plaintiffs allege the 2025 Guidance is a final agency action because "it has the legal effect of ending substantive and procedural protections that were in place for over thirty years." Compl. ¶ 129. But neither the 2021 Guidance nor the 2025 Guidance constitute a legislative rule with binding, legal consequences for Plaintiffs. Indeed, both the 2021 Guidance and the 2025 Guidance disclaim creating any such right. Ex. 4 at 1 (explaining the memorandum "may not be relied upon to create any right … enforceable at law by any party in any … matter); Ex. 3 at 5 (same). And neither interprets the scope of the parties' statutory rights or duties, or "limits" an immigration enforcement officers' "statutory authority." Ex. 3 at 4 ("This guidance does not limit an …. Employee's statutory authority …."). Nor is either necessary for immigration officers to carry out statutory enforcement actions. As such, both the current and the rescinded guidance provide no enforceable safe harbor to Plaintiffs or

**Page 31      Defendants' Motion to Dismiss**

their members.  At the same time, neither the current nor rescinded guidance strips immigration enforcement officers of their discretion.  To the contrary, both simply provide general guidance about how officers should exercise their "discretion" when making enforcement decisions related to actions in or near sensitive locations.  *See* Ex. 4 ("[T]he exercise of judgment is required."); Ex. 5 (calling for "case-by-case determinations regarding whether, where, and when to conduct an immigration enforcement action in or near a protected area").

Accordingly, the challenged guidance merely serves as internal advisement to immigration enforcement officers about their discretion to conduct enforcement actions in or near sensitive locations and does not carry the force of law necessary to constitute final agency action.  *See, e.g.*, *Ass'n of Flight Attendants-CWA, AFL-CIO*, 785 F.3d 710, 713 (D.C. Cir. 2015) (finding internal guidance did not have independent force and effect of law to be reviewable under the APA); *W. Radio Servs. Co. v. Espy*, 79 F.3d 896, 900 (9th Cir. 1996) (same); *see also S. California All. of Publicly Owned Treatment Works v. U.S. Env't Prot. Agency*, 8 F.4th 831, 837 (9th Cir. 2021) (explaining there is no final agency action "when subsequent agency decision making is necessary to create any practical consequences").  The APA claim thus fails.

## CONCLUSION

The Court should dismiss this case for lack of jurisdiction and failure to state a claim.

Respectfully submitted this 21st day of July, 2025.


WILLIAM M. NARUS
Acting United States Attorney
District of Oregon


/s/ *Patrick J. Conti*
PATRICK J. CONTI
Assistant United States Attorney
Attorneys for Defendants