**SCOTT E. BRADFORD, OSB #062824**
United States Attorney
District of Oregon
**BENJAMIN T. HICKMAN, DCB #498167**
Assistant United States Attorney
Benjamin.Hickman@usdoj.gov
1000 SW Third Avenue, Suite 600
Portland, Oregon 97204-2936
Phone: 503.727.1000
    Attorneys for Defendants

## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

| | |
|---|---|
| **PINEROS Y CAMPESINOS UNIDOS DEL NOROESTE, et al.,** | Case No. 6:25-cv-00699-AA |
| Plaintiffs, | **DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT** |
| **v.** | |
| **KRISTI NOEM, et al.,** | Fed. R. Civ. P. 12(b)(1) Fed. R. Civ. P. 12(b)(6) |
| Defendants. | |

## Table of Contents

CERTIFICATE OF COMPLIANCE WITH LR 7-1 ...................................................1

MOTION ........................................................................................................1

MEMORANDUM ............................................................................................2

BACKGROUND .............................................................................................2

    I.     Statutory background: With one exception, Congress has never restricted the Executive Branch from enforcing immigration laws in particular places ....................................................................................2

    II.    Regulatory background: DHS internal guidance has always allowed immigration enforcement actions in or near sensitive locations .........4

    III.   Factual and procedural background: Plaintiffs seek to reinstate earlier internal guidance—which allowed enforcement in sensitive locations—because of an alleged threat to people not parties to this action ....................................................................................................6

    IV.   Related Lawsuits ...............................................................................7

LEGAL STANDARDS.....................................................................................9

ARGUMENT...................................................................................................10

    I.     Plaintiffs lack Article III standing....................................................10

        A.    Third parties' fears of enforcement action and the diversion of Plaintiffs' resources are not cognizable injuries........................11

        B.    The alleged injuries cannot be traced to the 2025 Guidance rather than to common knowledge of DHS's stepped-up enforcement.................................................................................14

        C.    A favorable decision would not redress the alleged injuries because prior guidance allowed immigration enforcement in sensitive places ........................................................................17

i

II.    The complaint fails to state a RFRA claim.........................................19

    A.    The 2025 Guidance, which does not target Plaintiffs, does not impose a substantial burden on their religious exercise ..........19

    B.    Even if the 2025 Guidance imposes a substantial burden, it furthers compelling government interests in the least restrictive means.......................................................................23

III.    The complaint fails to state a First Amendment claim .....................26

    A.    Because the 2025 Guidance is neutral about religious exercise and membership in a group, it does not impose a significant burden on Plaintiffs' right to associate.....................................27

    B.    The 2025 Guidance furthers compelling government interests through narrowly tailored means ..............................................29

IV.    The Court lacks jurisdiction over the APA claims. ............................29

    A.    The subject matter of the 2025 Guidance is committed to agency discretion.....................................................................29

    B.    The internal guidance is not a final agency action ...................31

CONCLUSION ...............................................................................................34

**Table of Authorities**

**Federal Cases**

*Al-Owhali v. Ashcroft*, 279 F. Supp. 2d 13 (D.D.C. 2003) .................................. 14

*Allen v. Wright*, 468 U.S. 737 (1984) .................................................... 10

*Apache Stronghold v. United States*, 101 F.4th 1036 (9th Cir. 2024) ................. 19

*Arizona v. United States*, 567 U.S. 387 (2012) ........................................... 2, 23, 30

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .................................................. 10

*Ass'n of Flight Attendants-CWA, AFL-CIO v. Huerta*,
    785 F.3d 710 ...................................................................... 32, 34

*Bennett v. Spear*, 520 U.S. 154 (1997) ................................................. 32

*Blackie's House of Beef, Inc. v. Castillo*, 659 F.2d 1211 (D.C. Cir. 1981) ...... 23, 25

*Bowen v Roy*, 476 U.S. 693 (1986) ...................................................... 22

*Boy Scouts of Am. v. Dale*, 530 U.S. 640 (2000) ................................... 26

*Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682 (2014) ...................... 19, 21, 22

*California v. Texas*, 593 U.S. 659 (2021) ........................................... 15

*City of Boerne v. Flores*, 521 U.S. 507 (1997) ...................................... 19

*Clapper v. Amnesty Int'l USA*, 568 U.S. 398 (2013) ................................. *passim*

*Ctr. for Cmty. Action & Envtl. Justice v. BNSF R. Co.*,
    764 F.3d 1019 (9th Cir. 2014) .................................................. 10

*DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332 (2006) .......................... 10

*Denver Public Schools v. Noem,* No. 1:25-cv-00474 (D. Colo.)............................8

*Dep't of Com. v. New York*, 588 U.S. 752 (2019) ................................. 15

*Doe v. Irwin*, 615 F.2d 1162 (6th Cir. 1980) ...................................... 20

iii

*Employment Division v. Smith*, 494 U.S. 872 (1990) ........................................... 19

*Fernandez v. Mukasey*, 520 F.3d 965 (9th Cir. 2008) ........................................... 22

*Food & Drug Admin. v. All. for Hippocratic Med.*,
    602 U.S. 367 (2024) ................................................................................. 16, 17

*Gallo Cattle Co. v. U.S. Dep't of Agric.*, 159 F.3d 1194 (9th Cir. 1998) .............. 31

*Garland v. Aleman Gonzalez*, 596 U.S. 543 (2022) ................................................ 3

*Go Leasing, Inc. v. Nat'l Transp. Safety Bd.*, 800 F.2d 1514 (9th Cir. 1986) ..... 30

*Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*,
    546 U.S. 418 (2006) ................................................................................24, 27

*Heckler v. Chaney*, 470 U.S. 821 (1985) ...................................................... 29, 31

*Inst. for Fisheries Res. v. Hahn*, 424 F. Supp. 3d 740 (N.D. Cal. 2019) ............. 32

*Iowaska Church of Healing v. Werfel*, 105 F.4th 402 (D.C. Cir. 2024) ........ 23, 24

*Juliana v. United States*, 947 F.3d 1159 (9th Cir. 2020) .................................... 11

*Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375 (1994) ........................ 9

*Laird v. Tatum*, 408 U.S. 1 (1972) ............................................................... 11, 28

*Lujan v. Defs. of Wildlife*, 504 U.S. 555 (1992) .................................................. 18

*Lyng v. Nw. Indian Cemetery Protective Ass'n*, 485 U.S. 439 (1988) ............. 21-22

*Mennonite Church USA*, No. 25-cv-00403 (DLF), __ F. Supp. 3d __,
    2025 WL 1094223 (D.D.C. Apr. 11, 2025) ............................................ *passim*

*Nat'l Treasury Emps. Union v. Von Raab*, 489 U.S. 656 (1989) ......................... 23

*Navajo Nation v. U.S. Forest Serv.*, 535 F.3d 1058 (9th Cir. 2008) .................... 20

*Nken v. Holder*, 556 U.S. 418 (2009) ................................................................. 24

*Philadelphia Yearly Meeting of Religious Soc'y of Friends v. U.S. Dep't of Homeland Sec.,* 767 F. Supp. 3d 293 (D. Md. 2025) ............................................8

*Pistor v. Garcia,* 791 F.3d 1104 (9th Cir. 2015) ...................................... 9

*Presbyterian Church (U.S.A.) v. United States,* 870 F.2d 518 (9th Cir. 1989) ........................................................................13, 14

*Real Alternatives, Inc. v. Sec'y Dep't of Health & Hum. Servs.,* 867 F.3d 338 (3d Cir. 2017) ...................................................... 20

*Roberts v. U.S. Jaycees,* 468 U.S. 609 (1984) ...................................... 26

*Robinson v. United States,* 586 F.3d 683 (9th Cir. 2009) ...................................... 9

*Rumsfeld v. F. for Acad. & Institutional Rts., Inc.,* 547 U.S. 47 (2006) .............. 26

*S. California All. of Publicly Owned Treatment Works v. U.S. Env't Prot. Agency,* 8 F.4th 831 (9th Cir. 2021) .............................................. 34

*Safe Air for Everyone v. Meyer,* 373 F.3d 1035 (9th Cir. 2004) ........................... 9

*Sherbert v. Verner,* 374 U.S. 398 (1963) ....................................................20, 21, 22

*Singh v. Berger,* 56 F.4th 88 (D.C. Cir. 2022) ...................................... 25

*Susan B. Anthony List v. Driehaus,* 573 U.S. 149 (2014) ................................... 12

*United States v. Grady,* 18 F.4th 1275 (11th Cir. 2021) ...................................... 25

*United States v. Lee,* 455 U.S. 252 (1982) .......................................... 24

*United States v. Place,* 462 U.S. 696 (1983) ...................................... 26

*United States v. Texas,* 599 U.S. 670 (2023) ............................................... *passim*

*W. Radio Servs. Co. v. Espy,* 79 F.3d 896 (9th Cir. 1996) ................................... 37

*Wilson v. Lynch,* 835 F.3d 1083 (9th Cir. 2016) ............................................ 36, 34

*Wisconsin v. Yoder,* 406 U.S. 205 (1972) ........................................................20, 21

## Federal Statutes

5 U.S.C. § 701 .............................................................................................. 29

5 U.S.C. § 704 ...............................................................................................31

6 U.S.C. § 202 .............................................................................................. 30

8 U.S.C. § 1103 ............................................................................................... 2

8 U.S.C. § 1252 ........................................................................................... 3, 8

8 U.S.C. § 1357 ..................................................................................... 3, 23, 31

8 U.S.C. §§ 1221–31 ................................................................................... 3, 23

8 U.S.C. § 1226 .............................................................................................23

42 U.S.C. § 2000bb-1 .................................................................................... 19

## Federal Rules

Fed. R. Civ. P. 12 ...........................................................................................9

## Other Authorities

Exec. Order No. 14159, *Protecting the American People against Invasion*, 90 Fed.
   Reg. 8443 (Jan. 20, 2025) ...................................................................... 15-16

Immigration Reform and Control Act of 1986, Pub. L. No. 99-603, § 115(1), 100
   Stat. 3359, 3384..........................................................................................24

Local Rule 7-1..................................................................................................1

## CERTIFICATE OF COMPLIANCE WITH LR 7-1

Counsel conferred but were unable to resolve this matter.  Plaintiffs oppose this motion.

## MOTION

The Court should dismiss the amended complaint on these grounds:

1.    Under Supreme Court and Ninth Circuit precedent, a plaintiff cannot establish Article III standing merely because third parties might be the subject of a government enforcement action.  The Plaintiffs here allege injuries because people not parties to this action—parishioners of churches, students of teachers, for example—might be detained and removed from the country by the Department of Homeland Security.  Because Plaintiffs are not the people potentially subject to immigration enforcement, they lack standing.

2.    For a RFRA claim, Supreme Court and Ninth Circuit precedent require Plaintiffs to plead a substantial burden on free exercise: that government action is coercing them to act contrary to their religious beliefs with the threat of civil or criminal sanctions.  The amended complaint does not plead that the Plaintiffs asserting RFRA—churches and an interfaith organization— are at risk of civil or criminal sanctions, even if parishioners might be subject to detention and removal.  The amended complaint fails to plead a RFRA claim.

3.     For an expressive-association claim under the First Amendment, Supreme Court precedent requires Plaintiffs to plead a significant burden on their activities, a significant burden amounting to coercion.  The amended

**Page 1       Defendants' Motion to Dismiss Amended Complaint**

complaint does not plead that the challenged DHS guidance coerces the Plaintiffs asserting the First Amendment—the churches, interfaith organization, a Latinx advocacy organization, and unions—to do anything, for it only pleads that Plaintiffs' parishioners, members, and students of teachers could be subject to detention and removal.  The amended complaint fails to plead a First Amendment claim.

4.     To be reviewable under the Administrative Procedure Act, an agency action must not be committed to agency discretion, and the agency action must be final.  The agency action of which Plaintiffs complain, DHS internal guidance to immigration officers, addresses enforcement matters delegated to DHS by statute, and the guidance does not mandate or prohibit any immigration enforcement action involving any particular person or any particular place.  The issuance of the guidance is committed to agency discretion, and it does not constitute a final agency action.

## MEMORANDUM

## BACKGROUND

**I.     Statutory background: With one exception, Congress has never restricted the Executive Branch from enforcing immigration laws in particular places.**

"The Government of the United States has broad, undoubted power over the subject of immigration and the status of aliens." *Arizona v. United States*, 567 U.S. 387, 394 (2012).  Congress has directed DHS to enforce the Nation's immigration laws, 8 U.S.C. § 1103(a)(1), and has granted immigration officers

**Page 2       Defendants' Motion to Dismiss Amended Complaint**

broad authority to arrest and detain removable aliens, among other immigration enforcement actions, *id.* § 1357.

Congress has not placed location-based restrictions on that authority, with one exception: section 1357(e) of the Immigration and Nationality Act requires immigration officers to obtain a warrant or the owner's consent before entering a farm or other outdoor agricultural operation for the purpose of interrogating a person believed to be an alien about that person's right to be in or remain in the United States. 8 U.S.C. § 1357(e). But Congress has not otherwise imposed any location-based restrictions—such as those relating to places of worship—on the general arrest and detention authority of immigration officers.

Congress has, however, limited the power of lower courts to enjoin DHS from acting pursuant to certain statutory provisions that authorize immigration agents to detain and remove aliens. Except in a case brought by "an individual alien" in removal proceedings, and "[r]egardless of the nature of the action or claim or of the identity of the party or parties bringing the action, no court (other than the Supreme Court) shall have jurisdiction or authority to enjoin or restrain the operation of [8 U.S.C. §§ 1221–1231]." 8 U.S.C. § 1252(f)(1). Those provisions "charge the Federal Government with the implementation and enforcement of the immigration laws governing the inspection, apprehension, examination, and removal of aliens." *Garland v. Aleman Gonzalez*, 596 U.S. 543, 549–50 (2022).

**Page 3       Defendants' Motion to Dismiss Amended Complaint**

##    II.    Regulatory background: DHS internal guidance has always allowed immigration enforcement actions in or near sensitive locations.

As the amended complaint explains, for decades, federal agencies charged with enforcing immigration laws have issued internal guidance to immigration officers governing the factors they should consider, and the approvals they should obtain, before conducting enforcement actions in or near sensitive locations, including places of worship and schools.  Am. Compl. ¶¶ 33–49.  But, contrary to the amended complaint's phrasing, the guidance has never imposed an "immigration nonenforcement policy" in sensitive places.  *Id.* ¶ 33.

Federal agencies have consistently instructed officers that they may conduct immigration enforcement actions in or near places of worship and schools under exigent circumstances or with prior supervisor approval.  *See, e.g.*, Decl. of Benjamin T. Hickman, Ex. 1 (Puleo Memorandum); *Id.*, Ex. 2 (Morton Memorandum).  As the Morton Memorandum explained, the agency's guidance was "meant to ensure that ICE officers and agents exercise sound judgment when enforcing federal law at or focused on sensitive locations" but was "not intended to categorically prohibit lawful enforcement operations when there is an immediate need for enforcement action …."  *Id.*, p. 2 (emphasis omitted).

In 2021, DHS updated its guidance regarding enforcement activities near sensitive locations.  Hickman Decl., Ex. 3 (Mayorkas Memorandum).  Consistent with prior memoranda, the Mayorkas Memorandum urged agents to avoid taking enforcement actions in or near sensitive locations but recognized that

**Page 4    Defendants' Motion to Dismiss Amended Complaint**

there were circumstances "under which an enforcement action" in or near a sensitive location "needs to be taken." *Id.*, p. 3. The guidance identified several circumstances that would justify action in or near a sensitive location but stressed that the list was "not complete" and that "the exercise of judgment is required." *Id.*, pp. 3–4. The guidance instructed immigration officers, "[a]bsent exigent circumstances," to "seek prior approval from their Agency's headquarters, or as" otherwise delegated before conducting an enforcement action. *Id.*, p. 4. Finally, the guidance expressly stated that it "does not limit an agency's or employee's statutory authority" and "is not intended to, does not, and may not be relied upon to create any right or benefit, substantive or procedural, enforceable at law by any party." *Id.*, pp. 4–5.

On January 20, 2025, DHS rescinded the Mayorkas Memorandum and issued superseding guidance. Hickman Decl., Ex. 4 (Huffman Memorandum). The Huffman Memorandum explained that immigration officers routinely use their "enforcement discretion to balance a variety of interests, including the degree to which any law enforcement action occurs in a sensitive location." *Id.* The guidance directs agents to "continue to use that discretion along with a healthy dose of common sense," but explained that it is "not necessary … for the head of the agency to create bright line rules regarding where our immigration laws are permitted to be enforced." *Id.* The guidance acknowledged, however, that component heads "may wish to issue further guidance to assist officers in exercising appropriate enforcement discretion." *Id.*

**Page 5        Defendants' Motion to Dismiss Amended Complaint**

On January 31, 2025, ICE issued follow-on guidance charging "Assistant Field Office Directors (AFODs) and Assistant Special Agents in Charge (ASACs) with responsibility for making case-by-case determinations regarding whether, where, and when to conduct an immigration enforcement action in or near a protected area."  Hickman Decl., Ex. 5 (Vitello Memorandum).  CBP has not issued its own follow-on guidance.

### III.    Factual and procedural background: Plaintiffs seek to reinstate earlier internal guidance—which allowed enforcement in sensitive places—because of an alleged threat to people not parties to this action.

On September 9, 2025, Plaintiffs—a coalition of churches, a Latinx organization, an interfaith organization, labor unions, and individual educators—filed an amended complaint seeking declaratory and injunctive relief.  Am. Compl. ¶ 9, Prayer for Relief.  Plaintiffs allege that the Huffman and Vitello Memoranda ("the 2025 Guidance") have caused widespread fear of potential enforcement actions at churches, schools, and gatherings of organizations' members.  *Id.* ¶ 56.

None of the people who allegedly fear being arrested, detained, and removed are parties to this action.  Absent parties include the churches' parishioners, beneficiaries of the Latinx organization's advocacy and services, students of the educators who are members of the unions, and students of the individual, non-union educators.

**Page 6        Defendants' Motion to Dismiss Amended Complaint**

In the absence of those parties, Plaintiffs assert for their cause of action the premise that the 2025 Guidance has forced them to divert resources to keep their locations safe from potential immigration enforcement actions and that the guidance has caused a decline in attendance at their locations, at their gatherings, and of people seeking their services. *Id.* ¶ 56.

Plaintiffs claim that the change from the Mayorkas Memorandum ("the 2021 Guidance") to the 2025 Guidance violates RFRA and their First Amendment right of expressive association. They also claim the 2025 Guidance is arbitrary and capricious in violation of the APA. *Id.* ¶¶ 204–33. Plaintiffs, however, do not ask the Court merely to vacate the 2025 Guidance but to reinstate the 2021 Guidance, which also permits enforcement actions in sensitive places. *Id.*, Prayer for Relief.

A subset of Plaintiffs filed the original complaint earlier in 2025. Defendants moved to dismiss that complaint on the same grounds presented in this motion; in response, Plaintiffs amended the complaint to add as parties the labor unions—the National Education Association and the American Federation of Teachers—and individual educators from a Montessori school in Beaverton, Oregon. ECF 17, 29. The amended complaint is substantively the same as the original complaint.

## IV.    Related Lawsuits

The 2025 Guidance has been challenged in three other lawsuits.

**Page 7        Defendants' Motion to Dismiss Amended Complaint**

In the first, *Philadelphia Yearly Meeting of Religious Society of Friends v. U.S. Department of Homeland Security*, several religious groups similarly alleged violations of RFRA, the First Amendment, and APA based on the 2025 Guidance. 767 F. Supp. 3d 293, 304 (D. Md. 2025). On February 24, 2025, the court granted the plaintiffs' motion for a preliminary injunction, after finding they likely had standing and had made a sufficient showing on their RFRA and First Amendment claims. *See id.* at 319, 328, 333. However, consistent with 8 U.S.C. § 1252(f)(1), the court refused to enjoin "DHS's ability to engage in arrests pursuant to an administrative warrant." *Id.* at 320; *see also* discussion of 8 U.S.C. § 1252(f)(1) *supra* at 3–4. Defendants' motion to dismiss the APA claims is pending in the district court case. Defendants appealed the preliminary injunction to the Fourth Circuit, and briefing is complete. (Case No. 25-1512.)

In the second similar case, *Denver Public Schools v. Noem*, No. 1:25-cv-00474 (D. Colo.), a public school system alleged that the 2025 Guidance violated the APA and moved for preliminary relief. On March 7, 2025, the court denied the motion for lack of standing. *See* Hickman Decl., Ex. 6 (Mar. 7, 2025 Hearing Tr.) at 55–56. On June 9, 2025, the court dismissed the case based on the parties' stipulation. D. Colo., Case No. 1:25-cv-00474-DDD-KAS, ECF 59.

In the third similar case, *Mennonite Church USA v. U.S. Department of Homeland Security*, twenty-seven faith communities alleged violations of RFRA, the First Amendment, and APA based on the 2025 Guidance. No. 25-cv-00403

**Page 8        Defendants' Motion to Dismiss Amended Complaint**

(DLF), __ F. Supp. 3d __, 2025 WL 1094223, at *1 (D.D.C. Apr. 11, 2025).

On April 11, 2025, the district court denied the plaintiffs' motion for a

preliminary injunction to enjoin the 2025 Guidance for lack of standing.  *Id.*

at *8.  The district court's denial of a preliminary injunction is on appeal before

the D.C. Circuit, which has scheduled oral argument on February 5, 2026. (Case

No. 25-5209.)

## LEGAL STANDARDS

"Federal courts are courts of limited jurisdiction," and an action is

presumed to lie "outside this limited jurisdiction."  *Kokkonen v. Guardian Life*

*Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).  When jurisdiction is challenged under

Federal Rule of Civil Procedure 12(b)(1), the plaintiff bears the burden of

establishing jurisdiction.  *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039

(9th Cir. 2004).  A motion to dismiss under Rule 12(b)(1) may be facial or factual.

*Id.*  A facial challenge accepts the complaint's allegations but contests they are

sufficient to invoke federal jurisdiction.  *Id.*  In a factual challenge, the

truthfulness of the allegations is disputed, and the Court may "hear evidence

regarding jurisdiction and resolv[e] factual disputes where necessary."  *Robinson*

*v. United States*, 586 F.3d 683, 685 (9th Cir. 2009) (citation omitted).  When a

court "lacks subject-matter jurisdiction, the court must dismiss the complaint."

*Pistor v. Garcia*, 791 F.3d 1104, 1111 (9th Cir. 2015) (citation omitted).

To survive a motion to dismiss under Federal Rule of Civil Procedure

12(b)(6), "a complaint must contain sufficient factual matter, accepted as true,

**Page 9        Defendants' Motion to Dismiss Amended Complaint**

'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. A complaint may be dismissed when there is "either a lack of a cognizable theory or the absence of sufficient facts alleged under a cognizable legal claim." *Ctr. for Cmty. Action & Envtl. Justice v. BNSF R. Co.*, 764 F.3d 1019, 1023 (9th Cir. 2014) (quoting *Hinds Inves., L.P. v. Angioli*, 654 F.3d 846, 850 (9th Cir. 2011)).

**ARGUMENT**

## I.    Plaintiffs lack Article III standing.

"No principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 341 (2006) (internal quotation marks omitted). This constitutional limitation requires plaintiffs to demonstrate that they have standing to sue so that courts do not operate as an open forum for "general complaints about the way in which the government goes about its business." *Allen v. Wright*, 468 U.S. 737, 760 (1984).

"To have standing under Article III, a plaintiff must have (1) a concrete and particularized injury that (2) is caused by the challenged conduct and (3) is

**Page 10        Defendants' Motion to Dismiss Amended Complaint**

likely redressable by a favorable judicial decision." *Juliana v. United States*, 947 F.3d 1159, 1168 (9th Cir. 2020).

Plaintiffs allege that they have been injured because the 2025 Guidance has chilled participation in their services and has financially harmed them. *See, e.g.*, Am. Compl. ¶¶ 68, 113, 118. As articulated below, Plaintiffs' alleged personal stake in this litigation fails to satisfy their burden to establish Article III standing and the Court thus lacks jurisdiction over this action.

### A. Third parties' fears of enforcement action and the diversion of Plaintiffs' resources are not cognizable injuries.

To support standing, an injury must be "concrete, particularized, and actual or imminent." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (quoting *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 149 (2010)). When the alleged injury arises from an "exercise of governmental power" that is "regulatory, proscriptive, or compulsory in nature," the "complainant" must be "presently or prospectively subject to the regulations, proscriptions, or compulsions" at issue. *Laird v. Tatum*, 408 U.S. 1, 11 (1972). When the "complainant" is not subject to the challenged exercise of government power, the chill that arises from past or immediately threatened exercise of governmental power does not constitute a concrete, particularized injury. *Id.*; *Clapper*, 568 U.S. at 419 (rejecting standing based on the chilling effect of a policy that "does not regulate, constrain, or compel any action on [the plaintiffs'] part").

**Page 11**    **Defendants' Motion to Dismiss Amended Complaint**

Plaintiffs lack a cognizable injury.  The 2025 Guidance does not regulate, constrain, or compel any action on the part of churches, labor unions, advocacy organizations, or individuals in their capacity as educators; the guidance does not command or prohibit *these Plaintiffs'* conduct.  Rather, the guidance instructs *immigration enforcement officers* to exercise *their discretion* and to use common sense and discretion when contemplating enforcement actions in or near sensitive locations.  The 2025 Guidance "*authorizes*—but does not *mandate or direct*—" the immigration enforcement actions that Plaintiffs' members fear— and does not mandate or direct any action against these Plaintiffs.  *Clapper*, 568 U.S. at 412 (emphases in original).

Indeed, the complaint contains no allegations that Plaintiffs have received any threat of immigration enforcement or that they have otherwise been "singled out or uniquely targeted by the ... government for [enforcement]." *Mennonite Church USA*, 2025 WL 1094223, at *4 (quoting *Ord v. D.C.*, 587 F.3d 1136, 1140 (D.C. Cir. 2009)).  Plaintiffs thus seek pre-enforcement review of the 2025 Guidance, but pre-enforcement review is warranted only "under circumstances that render the threatened enforcement sufficiently imminent." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014).  Plaintiffs cannot meet that standard justifying pre-enforcement review.  *See Mennonite Church USA*, 2025 WL 1094223, at *5 (finding religious organizations challenging the 2025 Guidance "lack standing to assert a pre-enforcement challenge").

**Page 12      Defendants' Motion to Dismiss Amended Complaint**

Plaintiffs' allegations that they have incurred costs and diverted resources to address their members' fears of future immigration enforcement (*see, e.g.*, Am. Compl. ¶ 118) are not cognizable injuries.  As the Supreme Court has explained, parties cannot "manufacture" standing by diverting resources to address "their fears of hypothetical future harm," even if those actions are "reasonable." *Clapper*, 568 U.S. at 416; *Mennonite Church USA*, 2025 WL 1094223, at *8 (finding no standing based on costs incurred to protect against "hypothetical" future immigration enforcement actions).

*United States v. Texas*, 599 U.S. 670 (2023), highlights the lack of a cognizable injury in this case.  In *Texas*, the Supreme Court held that parties challenging immigration enforcement priorities lack an Article III injury because such suits "run up against the Executive's Article II authority to enforce federal law," and "courts generally lack meaningful standards for assessing the propriety of enforcement choices" given the Executive Branch's enforcement discretion to weigh "resource constraints and regularly changing public-safety and public-welfare needs" when devising its immigration enforcement policy. *Id.* at 678–80.  Plaintiffs' lawsuit, which challenges an internal memo guiding officers about how to apply limited resources, likewise fails for a lack of a cognizable injury.

In *Presbyterian Church (U.S.A.) v. United States*, the Ninth Circuit held that churches' allegations of decreased church attendance constituted concrete harm.  870 F.2d 518, 521–22 (9th Cir. 1989).  But the allegations in that case are

**Page 13      Defendants' Motion to Dismiss Amended Complaint**

distinguishable.  There, the churches alleged that declined attendance after immigration officers had repeatedly "entered the churches wearing 'body bugs' and surreptitiously recorded church services" over a nine-month period.  *Id.* Unlike in that case, Plaintiffs here have not alleged that any immigration officer has entered their locations, let alone conducted an extended surveillance operation targeting their members.  Nor have Plaintiffs alleged that the 2025 Guidance—rather than the administration's widely known, public announcements of its immigration-enforcement priorities—has caused the alleged decline in attendance.  *See Al-Owhali v. Ashcroft*, 279 F. Supp. 2d 13, 27 (D.D.C. 2003) (distinguishing *Presbyterian Church*); *Mennonite Church USA*, 2025 WL 1094223, at *5 n.6 (same).

Accordingly, Plaintiffs' and their members' alleged fears of future, discretionary immigration enforcement actions "are necessarily conjectural" and do not constitute a cognizable injury.  *Clapper*, 568 U.S. at 412.

### B. The alleged injuries cannot be traced to the 2025 Guidance rather than to common knowledge of DHS's stepped-up enforcement.

Standing further requires Plaintiffs to show that their cognizable injury "is fairly traceable to the challenged action."  *Clapper*, 568 U.S. at 409.  Even if Plaintiffs alleged a cognizable injury, they fail to allege that the 2025 Guidance caused that injury.

"[W]here a causal relation between injury and challenged action depends upon the decision of an independent third party"—here, Plaintiffs' members'

**Page 14      Defendants' Motion to Dismiss Amended Complaint**

or other peoples' decisions to attend services and other gatherings—standing is "substantially more difficult to establish." *California v. Texas*, 593 U.S. 659, 675 (2021) (citation and internal quotation marks omitted).  There must be evidence that the injury arises from the "predictable effect of Government action on the decisions of third parties." *Dep't of Com. v. New York*, 588 U.S. 752, 768 (2019).

This is especially difficult to show where, as here, third parties' subjective fear is the causal link between the possible government action and the injury. In *Clapper*, for instance, plaintiffs' injury stemmed from their foreign contacts who "might be disinclined to speak with them due to a fear of surveillance." 568 U.S. at 417 n.7.  Because the Supreme Court expressed "reluctance to endorse standing theories that rest on speculation about the decisions of independent actors," *id.* at 414, the Supreme Court ruled that the injuries were not "fairly traceable" to the government action "because they are based on third parties' subjective fear of surveillance."  *Id.* at 417 n.7.

Plaintiffs fail to allege a concrete injury fairly traceable to the 2025 Guidance.  Specifically, the amended complaint fails to allege that the 2025 Guidance—rather than the administration's widely known prioritization of immigration enforcement—caused the third parties' subjective fear resulting in Plaintiffs' alleged injury.

The current administration has prioritized enforcement of immigration laws against "all inadmissible and removable aliens."  Exec. Order No. 14159, *Protecting the American People Against Invasion*, 90 Fed. Reg. 8443 (Jan. 20,

**Page 15      Defendants' Motion to Dismiss Amended Complaint**

2025).  Plaintiffs acknowledge examples of this new prioritization. *See, e.g.*, Am. Compl. ¶ 5 (referencing highly publicized immigration enforcement actions that did not occur near sensitive locations).  And they allege, consistent with this broader immigration enforcement, that "[m]any [noncitizens] do not feel safe anywhere but their own homes." *Id.* ¶ 91.  Plaintiffs' members are thus "staying home to avoid encountering ICE in their own neighborhoods, not because churches or synagogues are locations of elevated risk." *Mennonite Church USA*, 2025 WL 1094223, at *6.  Accordingly, Plaintiffs have not shown that their alleged injuries are fairly traceable to the 2025 Guidance instead of a predictable response by third parties to the Executive Branch's highly publicized prioritization of widespread immigration enforcement.

Even if there were a clear link between the 2025 Guidance and Plaintiffs' members staying at home, that link "is too speculative or otherwise too attenuated to establish standing." *Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 390 (2024).  In *Hippocratic Medicine*, the Supreme Court indicated that teachers in border states would not have standing "to challenge allegedly lax immigration policies that lead to overcrowded classrooms." *Id.* at 392.  Otherwise, standing would be "limitless." *Id.*

The same is true here.  If Plaintiffs' alleged injuries are deemed fairly traceable to the 2025 Guidance, which does not target or otherwise constrain Plaintiffs' conduct, "virtually every citizen" would have standing to "challenge virtually every government action that they do not like." *Id.*  The Supreme

**Page 16**    **Defendants' Motion to Dismiss Amended Complaint**

Court has "consistently rejected" that path "as flatly inconsistent with Article III." *Id.* The Court should likewise reject Plaintiffs' attenuated link between their alleged injuries and the 2025 Guidance.

### C. A favorable decision would not redress the alleged injuries because prior guidance allowed immigration enforcement in sensitive places.

Plaintiffs seek a declaration that the 2025 Guidance is unlawful and an order enjoining the government from taking "any immigration enforcement actions that are not authorized in accordance with the 2021 Mayorkas Memo." Am. Compl. ¶¶ 232, 235. Plaintiffs have not alleged and cannot show that their "injury likely would be redressed by the requested judicial relief." *Hippocratic Med.*, 602 U.S. at 380.

First, the 2021 Guidance does not bar enforcement actions in or near sensitive locations. It simply requires "prior approval from … headquarters" or from a supervisor to whom the agency may "otherwise delegate." Hickman Decl., Ex. 3 at 4. Even if, for the sake of argument, that provision of the 2021 Guidance materially differs from the 2025 Guidance, a return to the 2021 Guidance would not bar enforcement actions in or near Plaintiffs' locations "without reverting to the enforcement priorities of the prior administration," too. *Mennonite Church USA*, 2025 WL 1094223, at *7 (citation and internal quotation marks omitted). Without a change to the administration's enforcement priorities, Plaintiffs' requested relief "would not rectify the alleged

**Page 17      Defendants' Motion to Dismiss Amended Complaint**

attendance declines" as enforcement actions in or near Plaintiffs' locations would not be barred. *Id.*

Relatedly, Plaintiffs have not alleged that their sought relief would remedy their attendance and resource concerns. When, as here, a plaintiff is not the object of the challenged government action, "standing … is ordinarily 'substantially more difficult' to establish." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 562 (1992) (quoting *Allen*, 468 U.S. at 758). This is because redress of the injury in that situation involves "unfettered choices made by independent actors not before the courts and whose exercise of broad and legitimate discretion the courts cannot presume either to control or to predict." *Id.* (quoting *ASARCO Inc. v. Kadish*, 490 U.S. 605, 615 (1989)). Here, Plaintiffs have not alleged that a return to the 2021 Guidance, which does not bar enforcement actions or create any enforceable rights, would assuage their members' fears in light of the current administration's highly publicized prioritization of widespread immigration enforcement. As such, Plaintiffs' sought relief will not redress their alleged injury without "restraining executive discretion more broadly, which the Court cannot do." *Mennonite Church USA*, 2025 WL 1094223, at *7.

***

Plaintiffs fail to satisfy the three components required for Article III standing. Without standing, Plaintiffs cannot invoke Article III jurisdiction. If the Court concludes that Plaintiffs lack standing, it may end the analysis here and dismiss the action.

**Page 18      Defendants' Motion to Dismiss Amended Complaint**

## II.    The complaint fails to state a RFRA claim.

RFRA prohibits the federal government from substantially burdening a person's exercise of religion unless the government demonstrates that the burden furthers a compelling government interest and is the least restrictive means of furthering that interest.  42 U.S.C. § 2000bb-1; *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 694–95 (2014).

Plaintiffs claim that the 2025 Guidance violates RFRA.  They allege that the new guidance deters "membership, attendance, and participation in religious services and related events."  Am. Compl. ¶ 216.  They further allege that the exercise of their religion has been burdened by having to prioritize "maintaining the safety of their sanctuaries" over "carrying out religious ceremonies and providing pastoral care."  *Id.*  Plaintiffs have not, however, plausibly alleged how the 2025 Guidance substantially burdens their religious beliefs.  Even if they did, the new guidance is narrowly tailored to further compelling governmental interests.

### A. The 2025 Guidance, which does not target Plaintiffs, does not impose a substantial burden on their religious exercise.

RFRA does not define "substantial burden."  *Apache Stronghold v. United States*, 101 F.4th 1036, 1058 (9th Cir. 2024).  Courts look to First Amendment caselaw predating *Employment Division v. Smith*, 494 U.S. 872 (1990), to construe the term, because Congress enacted RFRA "in direct response" to *Smith*.  *City of Boerne v. Flores*, 521 U.S. 507, 512 (1997).  Under pre-*Smith*

Page 19    Defendants' Motion to Dismiss Amended Complaint

caselaw, the government imposes a substantial burden "when individuals are forced to choose between following the tenets of their religion and receiving a governmental benefit … or coerced to act contrary to their religious beliefs by the threat of civil or criminal sanctions." *Navajo Nation v. U.S. Forest Serv.*, 535 F.3d 1058, 1070 (9th Cir. 2008), *overruled in part by Apache Stronghold*, 101 F.4th 1036 (holding that a "substantial burden" may also include "preventing access to religious exercise"). This requires a showing that the federal government is "either requiring or prohibiting" a religious exercise. *Doe v. Irwin*, 615 F.2d 1162, 1168 (6th Cir. 1980) (collecting cases).

For instance, in *Wisconsin v. Yoder*, Amish parents were convicted for violating Wisconsin's compulsory school attendance law. 406 U.S. 205, 207–08 (1972). The Supreme Court found that the requirement that the parents send their children to school "affirmatively compels them, under threat of criminal sanction, to perform acts undeniably at odds with fundamental tenets of their religious beliefs." *Id.* at 218. The Court reversed the convictions, holding the Wisconsin law "unduly burden[ed]" the exercise of their religion. *Id.* at 220 (citing *Sherbert v. Verner*, 374 U.S. 398 (1963)). As the Third Circuit has explained, "[c]ases finding that a substantial burden under RFRA have consistently done so" where the burden that interfered with the plaintiff's religious exercise is "directly implicated by federal action." *Real Alternatives, Inc. v. Sec'y Dep't of Health & Hum. Servs.*, 867 F.3d 338, 360 (3d Cir. 2017) (collecting cases).

**Page 20      Defendants' Motion to Dismiss Amended Complaint**

Unlike the criminal sanction in *Yoder*, the 2025 Guidance neither compels nor prohibits Plaintiffs' religious exercise. Indeed, the guidance contains no commands or prohibitions directed at Plaintiffs. Rather, it simply instructs immigration enforcement officers to exercise their "discretion" and "common sense" in deciding whether, where, and when to enforce federal immigration law. Hickman Decl., Ex. 4. Nor does the 2025 Guidance require enforcement officers to enforce federal immigration law in or near sensitive locations. It merely streamlines the supervisory approval process for such activity. *Id.*, Ex. 5 at 2.

Similarly, the 2025 Guidance does not indirectly coerce Plaintiffs to modify their behavior or violate their religious beliefs. In *Sherbert*, the claimant, a member of the Seventh-day Adventist Church, was denied unemployment benefits due to her conscientious objection to working on Saturdays. 374 U.S. at 400. The Supreme Court held that the claimant's "ineligibility for [unemployment] benefits derive[d] solely from the practice of her religion" and thus indirectly coerced her to choose between the tenets of her faith or forfeiting government benefits. *Id.* at 403–04. And, in *Hobby Lobby*, a federal mandate that certain employers provide health insurance coverage for contraception or face monetary fines constituted a substantial burden on plaintiffs' exercise of religion because the mandate forced plaintiffs to "engage in conduct that seriously violates their religious beliefs" or face "severe" economic consequences. 573 U.S. at 720–21. But to find indirect coercion like that in *Sherbert* and *Hobby Lobby*, the "crucial word" is "prohibit." *Lyng v. Nw. Indian*

**Page 21    Defendants' Motion to Dismiss Amended Complaint**

*Cemetery Protective Ass'n*, 485 U.S. 439, 451 (1988).  Unlike the government actions in *Sherbert* and *Hobby Lobby*, the 2025 Guidance does not prohibit Plaintiffs from exercising their religion by pitting their faith against a government benefit or penalty.

The 2025 Guidance, which allows, but does not mandate, enforcement actions, does not prohibit religious exercise.  RFRA, like the Free Exercise Clause, "simply cannot be understood to require the Government to conduct its own internal affairs in ways that comport with the religious beliefs of particularized citizens." *Bowen v Roy*, 476 U.S. 693, 699 (1986) (plurality op.). This is especially true considering that the Executive Branch "retains discretion over whether to remove a noncitizen from the United States." *Texas*, 599 U.S. at 679.  And how the Executive Branch exercises that discretion is an internal matter not suitable for judicial review, because the Executive Branch "must constantly react and adjust to the ever-shifting public-safety and public-welfare needs of the American people." *Id.* at 680.

Further, any coercive link between the 2025 Guidance and Plaintiffs' alleged declines in attendance "is too attenuated to create a substantial burden on petitioners' religious exercise." *Fernandez v. Mukasey*, 520 F.3d 965, 966 (9th Cir. 2008) (per curiam).  To start, the link rests on speculation that immigration enforcement officers may in the future decide to exercise their discretion to carry out an enforcement action in or near Plaintiffs' locations.  Additionally, the link between the 2025 Guidance and Plaintiffs' alleged religious burdens turns on the

**Page 22      Defendants' Motion to Dismiss Amended Complaint**

"independent decisions of third part[ies]." *Iowaska Church of Healing v. Werfel*, 105 F.4th 402, 413 (D.C. Cir. 2024). Given this attenuated link, it is too speculative that any burden on Plaintiffs' religious exercise is directly implicated by the 2025 Guidance and not for some other reason, including the broader policy prioritizing immigration enforcement.

**B. Even if the 2025 Guidance imposes a substantial burden, it furthers compelling government interests in the least restrictive means.**

Uniform enforcement of the nation's immigration laws is critically important to national security and public safety. "The Supreme Court has recognized that the public interest in enforcement of the immigration laws is significant." *Blackie's House of Beef, Inc. v. Castillo*, 659 F.2d 1211, 1221 (D.C. Cir. 1981) (citing cases); *see also Nat'l Treasury Emps. Union v. Von Raab*, 489 U.S. 656, 672 (1989) ("[T]he Government [has] compelling interests in safety and in the integrity of our borders."). Congress delegated significant authority to DHS to administer and enforce immigration laws without limiting the Executive's authority to conduct enforcement actions in or near places of worship or similar locations. *See, e.g.*, 8 U.S.C. §§ 1226, 1231, 1357; *see also Arizona*, 567 U.S. at 396 ("A principal feature of the removal system is the broad discretion exercised by immigration officials."). "The continued presence of an alien lawfully deemed removable undermines the streamlined removal proceedings [that Congress] established, and permit[s] and prolong[s]

**Page 23     Defendants' Motion to Dismiss Amended Complaint**

a continuing violation of United States law." *Nken v. Holder*, 556 U.S. 418, 436 (2009) (cleaned up).

The imposition of heightened procedural requirements for enforcement actions beyond what Congress provided in the INA would create a hodgepodge of immigration enforcement sanctuaries with different rules for the enforcement of generally applicable laws. Such a scheme would undermine Congress's instruction that "the immigration laws of the United States should be enforced vigorously and *uniformly*." Immigration Reform and Control Act of 1986, Pub. L. No. 99-603, § 115(1), 100 Stat. 3359, 3384 (emphasis added). The Supreme Court has recognized "that there may be instances in which a need for uniformity precludes the recognition of exceptions to generally applicable laws under RFRA." *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 436 (2006). This is such a case as both Congress and the Supreme Court have emphasized the need for uniform application and enforcement of immigration laws. *See United States v. Lee*, 455 U.S. 252, 260 (1982) (holding that "the broad public interest in maintaining a sound tax system is of such a high order, religious belief in conflict with the payment of taxes affords no basis for resisting the tax"); *Iowaska Church of Healing*, 105 F.4th at 416 ("[T]he IRS Decision and the attendant tax regulatory scheme could be justified by a compelling government interest that necessitates uniform application.").

It is true that the Supreme Court did not recognize the uniformity interest in *Gonzales*, a case that challenged a ban to a hallucinogenic tea used in

**Page 24      Defendants' Motion to Dismiss Amended Complaint**

religious ceremonies, but that was because of "the longstanding exemption from the Controlled Substances Act for religious use of peyote, and the fact that the very reason Congress enacted RFRA was to respond to a decision denying a claimed right to sacramental use of a controlled substance." *Gonzales*, 546 U.S. at 436–37.

Defendants thus have a compelling interest in "denying an exemption to these specific plaintiffs" from the uniform enforcement of the nation's immigration laws. *Singh v. Berger*, 56 F.4th 88, 99 (D.C. Cir. 2022) (internal quotation marks and citation omitted); *cf. United States v. Grady*, 18 F.4th 1275, 1287 (11th Cir. 2021) ("RFRA is not a 'get out of jail free card,' shielding [individuals] from criminal liability ….").

The 2025 Guidance is narrowly tailored to furthering the Defendants' compelling interests. The guidance acknowledges that "officers frequently apply enforcement discretion to balance a variety of interests" when conducting enforcement actions, "including the degree to which any law enforcement action occurs in a sensitive location." Hickman Decl., Ex. 4 at 1. And, as the Supreme Court has recognized, given "inevitable resource constraints and regularly changing public-safety and public-welfare needs, the Executive Branch must balance many factors when designing arrest and prosecution policies." *Texas*, 599 U.S. at 680. The 2025 Guidance allowing officers to exercise their discretion is narrowly tailored to further the "vigorous" enforcement program that Congress contemplated "in passing the [INA]." *Castillo*, 659 F.2d at 1219, 1221.

**Page 25**      **Defendants' Motion to Dismiss Amended Complaint**

At the same time, it is the least restrictive means to further the well-established principle that law enforcement officers have broad discretion, within the bounds of reasonableness, "to graduate their responses to the demands of any particular situation." *United States v. Place*, 462 U.S. 696, 709 n.10 (1983). To hold otherwise would conflict with the Supreme Court's warning that courts avoid "rigid" limitations on law enforcement officers by imposing "a clear rule to guide their conduct." *Id.*

## III.    The complaint fails to state a First Amendment claim.

"[I]mplicit in the right to engage in activities protected by the First Amendment" is "a corresponding right to associate with others in pursuit of a wide variety of political, social, economic, educational, religious, and cultural ends." *Roberts v. U.S. Jaycees*, 468 U.S. 609, 622 (1984) (collecting cases). The right of expressive association, however, "is not absolute." *Boy Scouts of Am. v. Dale*, 530 U.S. 640, 648 (2000). Government action rises to the level of unconstitutional only when it is direct and "significantly burden[s]" a party's expressive associational rights. *Id.* at 653. The Supreme Court has held the following types of government action to significantly burden the right to associate: penalties or loss of a benefit based on membership in a disfavored group, *Roberts*, 468 U.S. at 622–23; requiring an unwanted person be admitted into a group, *Dale*, 530 U.S. at 648 (2000); and "disclosure of membership lists for groups seeking anonymity," *Rumsfeld v. F. for Acad. & Institutional Rts., Inc.*, 547 U.S. 47, 69 (2006).

**Page 26**    **Defendants' Motion to Dismiss Amended Complaint**

Even if government action significantly burdens the right to associate with others, the action does not violate the First Amendment if the action was taken "to serve compelling state interests, unrelated to the suppression of ideas, that cannot be achieved through means significantly less restrictive of associational freedoms." *Roberts*, 468 U.S. at 623.

### A. Because the 2025 Guidance is neutral about religious exercise and membership in a group, it does not impose a significant burden on Plaintiffs' right to associate.

Plaintiffs allege that the 2025 Guidance "chills Plaintiffs' and their members' … ability to associate" in violation of their First Amendment rights. Am. Compl. ¶ 210. The 2025 Guidance, like the 2021 Guidance, which allows immigration officers to exercise discretion and obtain supervisory approval for enforcement actions in or near sensitive locations, falls short of government action that directly and significantly burdens Plaintiffs' right to associate.

The challenged guidance does not regulate, constrain, or compel Plaintiffs to modify their behavior. *See supra* at 22–26. Nor does it require immigration officers to carry out any enforcement actions, let alone in or near Plaintiffs' places of worship. Further, the guidance does not directly regulate Plaintiffs, or target their members based on their beliefs or attendance of Plaintiffs' services. And it does not bar Plaintiffs' members from associating. The challenged action is entirely unrelated to the members' religious exercise or membership in a union.

**Page 27     Defendants' Motion to Dismiss Amended Complaint**

The alleged burden on association here instead is based on the fear that immigration enforcement officers may decide to exercise their discretion to conduct enforcement actions in or near Plaintiffs' locations at some future date. But allegations of such subjective chill "are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm." *Laird*, 408 U.S. at 14.

A comparison between the 2021 Guidance, which Plaintiffs do not challenge as unconstitutional, and the 2025 Guidance, which they do, highlights the implausibility of Plaintiffs' allegations that the 2025 Guidance constitutes a direct and significant infringement of their right to associate. The 2021 Guidance provides "no bright-line definition of what constitutes 'near'" a place of worship, directing officers to simply use their "exercise of judgment." Hickman Decl., Ex. 3 at 3. That Guidance also allows immigration officers to enter places of worship with "prior approval from their Agency's headquarters" or from a supervisor to whom the agency "otherwise delegate[s]." *Id.* at 4. The 2025 Guidance similarly allows officers to exercise their discretion as to where to conduct enforcement actions and to seek prior verbal or written approval for enforcement actions in or near places of worship. *Id.*, Ex. 5 at 2. At the same time, neither guidance creates any legally enforceable rights. Even assuming that there has been an alleged chill, Plaintiffs fail to plausibly allege that the purported chill is based on any material difference between the 2021 Guidance

**Page 28    Defendants' Motion to Dismiss Amended Complaint**

and the 2025 Guidance, instead of the well-publicized change of enforcement priorities from one administration to the next.

## B. The 2025 Guidance furthers compelling government interests through narrowly tailored means.

Even if Plaintiffs plausibly alleged a direct and significant burden on their right to associate, the Court should still dismiss the claim because the 2025 Guidance serves the compelling government interest, as discussed above, in the enforcement of the nation's immigration laws and is the least restrictive means to further that interest. *See supra* at 26–30.

## IV. The Court lacks jurisdiction over the APA claims.

### A. The subject matter of the 2025 Guidance is committed to agency discretion.

The APA prohibits judicial review when "the agency action is committed to agency discretion by law." 5 U.S.C. § 701(a)(2). The APA may bar judicial review "even where Congress has not affirmatively precluded review." *Heckler v. Chaney*, 470 U.S. 821, 830 (1985). This happens when the "statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion," leaving the court with "no law to apply." *Id.*

"Congress may limit an agency's exercise of enforcement power if it wishes," but only when "it has indicated an intent to circumscribe agency enforcement discretion, and has provided meaningful standards for defining the limits of that discretion," is there "law to apply" under section 701(a)(2). *Id.* at 833–34. Decisions are "general[ly] unsuitabl[e]" for judicial review when they

**Page 29    Defendants' Motion to Dismiss Amended Complaint**

require "a complicated balancing of a number of factors which are peculiarly within [agency] expertise" or involve how best to spend "agency resources," including whether the agency "is likely to succeed if it acts" and "whether the particular enforcement action requested best fits the agency's overall policies." *Id.* at 831. "The agency is far better equipped than the courts to deal with the many variables involved in the proper ordering of its priorities." *Id.* at 831–32.

Courts may also consider whether "a decision has traditionally been 'committed to agency discretion' …." *Id.* at 832. Enforcement decisions traditionally involve considerable agency discretion. *See, e.g.*, *Texas*, 599 U.S. at 680 ("[T]he Executive Branch must balance many factors when devising arrest and prosecution policies."); *Go Leasing, Inc. v. Nat'l Transp. Safety Bd.*, 800 F.2d 1514, 1523 (9th Cir. 1986) ("[T]he Administrator need not promulgate rules constraining his discretion as to when to employ a particular statutory enforcement action.").

The 2025 Guidance, which provides internal guidance to immigration enforcement officers, is committed to agency discretion by law. Starting with the statutory scheme, the INA and other statutes grant immigration officers broad discretion in carrying out immigration laws. *See* 6 U.S.C. § 202(5) (charging DHS with "[e]stablishing national immigration enforcement policies and priorities"); *Arizona*, 567 U.S. at 396 ("A principal feature of the [congressionally established] removal system is the broad discretion exercised by immigration officials."). Nor did Congress "limit [the] agency's exercise of

**Page 30      Defendants' Motion to Dismiss Amended Complaint**

enforcement power," "either by setting substantive priorities, or by otherwise circumscribing [the] agency's power" to conduct immigration enforcement actions in or near Plaintiffs' locations. *Heckler*, 470 U.S. at 833. Congress has limited certain enforcement actions at farms. *See* 8 U.S.C. § 1357(e). But Congress has not imposed any location-based restrictions on immigration officers' general arrest and detention authority in or near places of worship or similar locations. Congress has not provided any "law to apply" with respect to internal guidance on location-based enforcement actions relevant to this case. At the same time, internal guidance on immigration enforcement actions in or near sensitive locations requires "a complicated balancing of a number of factors" peculiarly within DHS's expertise. *Id.* at 831; *Texas*, 599 U.S. at 680 ("[T]he Executive Branch must balance many factors when devising arrest and prosecution policies."). Accordingly, the 2025 Guidance is committed to agency discretion by law and not reviewable under the APA.

**B. The internal guidance is not a final agency action.**

Even if the challenged guidance were not committed to agency discretion, the claim would still fail for lack of final agency action.

The APA provides a limited waiver of the government's sovereign immunity for "final agency action for which there is no other adequate remedy in a court." *Gallo Cattle Co. v. U.S. Dep't of Agric.*, 159 F.3d 1194, 1198 (9th Cir. 1998) (quoting 5 U.S.C. § 704). "Section 704 reflects a congressional policy against premature judicial intervention into the administrative process, and in

**Page 31       Defendants' Motion to Dismiss Amended Complaint**

favor of courts resolving only disputes with concrete legal stakes." *Inst. for Fisheries Res. v. Hahn*, 424 F. Supp. 3d 740, 747 (N.D. Cal. 2019).

"As a general matter, two conditions must be satisfied for agency action to be 'final'." *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997). First, "the action must mark the 'consummation' of the agency's decisionmaking process," and "must not be of a merely tentative or interlocutory nature." *Id.* (citation omitted). Second, "the action must be one by which 'rights or obligations have been determined,' or from which 'legal consequences will flow.'" *Id.* at 178 (citation omitted). Neither the 2021 nor the 2025 Guidance meets this second component of reviewable final agency action because neither carries the force and effect of law.

In an APA challenge to internal guidance like this one, "the finality inquiry is often framed as the question of whether the challenged action is best understood as a non-binding action, like a policy statement or interpretive rule," and thus unreviewable under the APA, "or a binding legislative rule," which carries the force and effect of law. *Inst. for Fisheries Res.*, 424 F. Supp. 3d at 748 (quoting *Ass'n of Flight Attendants-CWA, AFL-CIO v. Huerta*, 785 F.3d 710, 716 (D.C. Cir. 2015)). A non-binding policy statement simply "explains how the agency will enforce a statute or regulation—in other words, how it will exercise its broad enforcement discretion … under some extant statute or rule." *Ass'n of Flight Attendants-CWA*, 785 F.3d at 716 (quoting *Nat'l Mining Ass'n v. McCarthy*, 758 F.3d 243, 252 (D.C. Cir. 2014)). By contrast, agency guidance

**Page 32      Defendants' Motion to Dismiss Amended Complaint**

rises to the level of a legislative rule with the "force of law" in three circumstances: "(1) when, in the absence of the rule, there would not be an adequate legislative basis for enforcement action; (2) when the agency has explicitly invoked its general legislative authority; or (3) when the rule effectively amends a prior legislative rule." *Wilson v. Lynch*, 835 F.3d 1083, 1099 (9th Cir. 2016) (internal quotation marks omitted).

Plaintiffs allege that the 2025 Guidance is a final agency action because "it has the legal effect of ending substantive and procedural protections that were in place for over thirty years." Am. Compl. ¶ 223. But neither the 2021 Guidance nor the 2025 Guidance constitute a legislative rule with binding, legal consequences for Plaintiffs. Indeed, both the 2021 Guidance and the 2025 Guidance disclaim creating any such right. Hickman Decl., Ex. 4 at 1 (explaining the memorandum "may not be relied upon to create any right … enforceable at law by any party in any … matter); *Id.*, Ex. 3 at 5 (same). And neither interprets the scope of the parties' statutory rights or duties, or "limits" an immigration enforcement officers' "statutory authority." *Id.*, Ex. 3 at 4 ("This guidance does not limit an …. Employee's statutory authority …."). Nor is either necessary for immigration officers to carry out statutory enforcement actions. As such, both the current and the rescinded guidance provide no enforceable safe harbor to Plaintiffs or their members. At the same time, neither the current nor rescinded guidance strips immigration enforcement officers of their discretion. To the contrary, both simply provide general guidance about how officers should

**Page 33      Defendants' Motion to Dismiss Amended Complaint**

exercise their "discretion" when making enforcement decisions related to actions in or near sensitive locations. *See id.*, Ex. 4 ("[T]he exercise of judgment is required."); *id.*, Ex. 5 (calling for "case-by-case determinations regarding whether, where, and when to conduct an immigration enforcement action in or near a protected area").

Accordingly, the challenged guidance merely serves as internal advisement to immigration enforcement officers about their discretion to conduct enforcement actions in or near sensitive locations, and does not carry the force of law necessary to constitute final agency action. *See, e.g., Ass'n of Flight Attendants-CWA, AFL-CIO*, 785 F.3d 710, 713 (D.C. Cir. 2015) (finding internal guidance did not have independent force and effect of law to be reviewable under the APA); *W. Radio Servs. Co. v. Espy*, 79 F.3d 896, 900 (9th Cir. 1996) (same); *see also S. California All. of Publicly Owned Treatment Works v. U.S. Env't Prot. Agency*, 8 F.4th 831, 837 (9th Cir. 2021) (explaining there is no final agency action "when subsequent agency decision making is necessary to create any practical consequences"). The APA claim thus fails.

## CONCLUSION

The Court should dismiss this case for lack of jurisdiction and failure to state a claim.

///

///

///

**Page 34      Defendants' Motion to Dismiss Amended Complaint**

Respectfully submitted this 2nd day of January, 2026.

SCOTT E. BRADFORD
United States Attorney
District of Oregon


/s/ *Benjamin T. Hickman*
BENJAMIN T. HICKMAN
Assistant United States Attorney
Attorneys for Defendants