**SCOTT E. BRADFORD, OSB #062824**
United States Attorney
District of Oregon
**BENJAMIN T. HICKMAN, DCB #498167**
Assistant United States Attorney
Benjamin.Hickman@usdoj.gov
1000 SW Third Avenue, Suite 600
Portland, Oregon 97204-2936
Phone: 503.727.1000
     Attorneys for Defendants

# UNITED STATES DISTRICT COURT

# DISTRICT OF OREGON

| | |
|---|---|
| PINEROS Y CAMPESINOS UNIDOS DEL NOROESTE, et al., | Case No. 6:25-cv-00699-AA |
| Plaintiffs, | |
| v. | DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT |
| KRISTI NOEM, et al., | |
| Defendants. | |

Defendants stand on their opening brief to fully refute the opposition brief. Here, Defendants highlight two propositions that confirm why the motion to dismiss should be granted:

1.    Neither statutes, regulations, nor internal DHS guidance prevented immigration officers from conducting enforcement actions in sensitive places before the 2025 Guidance was issued.

While the opposition brief identifies statutes and regulations that restrict warrantless enforcement actions in the interior of the country, the brief fails to identify a statute that specifically restricts enforcement actions in places such as the houses of worship, schools, and other sensitive places that are at issue here. *See* ECF 63 at 23–24.

The opposition brief strains to cast internal DHS guidance as imposing location restrictions. Sometimes the opposition brief calls guidance preceding the 2025 Guidance, including the Mayorkas Memorandum, "an immigration nonenforcement policy," which, as the opening brief explained, is not true on the memorandum's face. *Compare id.* at 4 *with* ECF 51 at 2–3. Sometimes the opposition brief avoids calling the pre-2025 guidance a nonenforcement policy, instead asserting that "the federal government tightly circumscribed civil immigration enforcement" in sensitive places. ECF 63 at 1. The opposition brief recognizes that, even under the supposedly tightly circumscribed guidance, enforcement in sensitive places could occur, not only in exigent circumstances

**Page 1**    **Defendants' Reply in Support of**
**Motion to Dismiss Amended Complaint**

if the action was "reported up the chain of command immediately following the enforcement action," but also in *any* appropriate circumstances with approval from headquarters. *Id.* at 2–3.

That the pre-2025 guidance permitted enforcement actions in sensitive places requires dismissal on each ground argued in the motion to dismiss.

a.       On the first ground in the motion, addressing lack of standing, no Plaintiff can claim that a favorable decision would redress the alleged harm. DHS could have taken the same enforcement actions under the Mayorkas Memorandum that it can under the 2025 Guidance. The Mayorkas Memorandum identified several circumstances that would justify action in or near a sensitive location but stressed that the list was "not complete" and that "the exercise of judgment [was] required." ECF 52, Exh. 3, pp. 3–4. The Mayorkas Memorandum instructed immigration officers, "[a]bsent exigent circumstances," to "seek prior approval from their Agency's headquarters," or "as [agencies] otherwise delegate, before taking an enforcement action in or near a protected area." *Id.*, p. 4. The guidance stated that it did "not limit an agency's or employee's statutory authority" and was "not intended to, [did] not, and [could] not be relied upon to create any right or benefit, substantive or procedural, enforceable at law by any party." *Id.*, pp. 4–5.

Even if this Court were to order a reinstatement of the Mayorkas Memorandum, Plaintiffs would enjoy no relief. For example, the educators from

**Page 2**       **Defendants' Reply in Support of
                  Motion to Dismiss Amended Complaint**

Guidepost Montessori School state that they "have themselves been affected by enforcement" at the school under the 2025 Guidance. ECF 63 at 8. Even if that is true, the same enforcement actions could have occurred under the Mayorkas Memorandum, which would have permitted officers to take those actions by obtaining "prior approval from their Agency's headquarters." ECF 52, Exh. 3, pp. 4. The Mayorkas Memorandum established no "right or benefit, substantive or procedural," to be free from enforcement actions at or near the school. *Id.*, pp. 4–5.

The same is true for the other Plaintiffs. The Mayorkas Memorandum allowed for the same possibility of immigration enforcement actions as the 2025 Guidance, such that parishioners of the Religious Plaintiffs could have been expected to avoid attending services at the same rate, the educator–members of the Associational Plaintiffs could have seen the same drop in student attendance, and the Organizational Plaintiffs could have seen members avoid attending rallies and other public events at the same rate. That fact is especially problematic for the Organizational Plaintiffs, who, by their own acknowledgement, must show that their diversion of resources resulted from more than "hypothetical" harm of anticipated enforcement actions. *See* ECF 63 at 13; *see also* ECF 51 at 11. The Organizational Plaintiffs are merely speculating that people are avoiding public events because DHS modified internal guidance, as opposed to some other cause, such as widespread public

Page 3    **Defendants' Reply in Support of**
**Motion to Dismiss Amended Complaint**

knowledge that DHS has stepped up enforcement. The act of enforcement is not the same thing as internal guidance.

The relief prayed for in the complaint—"An order enjoining Defendants from taking any immigration enforcement actions that are not authorized in accordance with the 2021 Mayorkas Memo," ECF 29 ¶ 238—violates the rule that "'standing is not dispensed in gross': A plaintiff's remedy must be tailored to redress the plaintiff's particular injury." *Gill v. Whitford*, 585 U.S. 48, 73 (2018) (quoting *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 353 (2006)). The judgment that Plaintiffs seek, which would permit immigration officers to take the same actions that they can take under the status quo, is not tailored to redress an injury.

b.      On the second and third grounds in the motion to dismiss, addressing RFRA and freedom of expressive association, respectively, Plaintiffs cannot plausibly allege that the 2025 Guidance substantially burdens their religious and expressive rights, as those causes of action require.

Plaintiffs contend, for example, that the 2025 Guidance substantially burdens their religious exercise because religious leaders cannot provide pastoral care and ministry, because participation in community events has declined, and because Plaintiffs have had to hire security at religious gatherings. ECF 63 at 28–31. Plaintiffs contend that the 2025 Guidance substantially

burdens their freedom of expressive association for similar reasons, such as decreased attendance at gatherings. *Id.* at 31–33.

Those allegations are implausible when Plaintiffs seek a reinstatement of the Mayorkas Memorandum. A plausible allegation must show "that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The Mayorkas Memorandum imposed the same burden on protected activities by instructing officers to exercise their judgment, by leaving officers' full statutory powers intact, and by declining to prohibit enforcement actions in any location. Plaintiffs have failed to show that they are entitled to relief because they cannot show that the 2025 Guidance caused any of their alleged harm.

c.      For the fourth ground in the motion to dismiss, addressing the Administrative Procedure Act, the similarities between the Mayorkas Memorandum and the 2025 Guidance underscore why the matters addressed in the guidance are committed to agency discretion by law and why the guidance does not constitute a final agency action.

Among other statutes, the statute creating DHS commits enforcement policies and priorities to agency discretion, stating, "The Secretary shall be responsible for … Establishing national immigration enforcement policies and priorities." 6 U.S.C. § 202(5). Congress did not envision that private parties

**Page 5      Defendants' Reply in Support of**
**            Motion to Dismiss Amended Complaint**

could dictate DHS's enforcement policies and priorities through civil actions

demanding that DHS follow a memorandum with wording that they prefer.

For the same reason, the 2025 Guidance does not constitute final agency

action. Rights and obligations are not determined, and legal consequences do not

flow, from changes in wording that still permit the same enforcement actions.

The District of Massachusetts just came to the same conclusion:

> It … seems clear that for the 2025 Policy to constitute
> final agency action, the 2021 Policy must have been
> final agency action as well. That is, for the rescission of
> a given policy to have "legal consequences" that flow
> from it, the policy being rescinded must itself have had
> "legal consequences" as well. *Cf. Biden v. Texas*, 142 S.
> Ct. 2528, 2544 (2022) (holding that rescission of policy
> providing for return to Mexico of non-Mexican
> immigrants detained at U.S. border was final agency
> action). If the initial policy had no legal consequences,
> then the decision to rescind it necessarily could not
> have any legal consequences either.
>
> By its terms, the 2021 Policy did not have sufficiently
> "concrete consequences" for either these plaintiffs or
> immigration-enforcement agents to constitute final
> agency action. *See Cal. Cmtys. Against Toxics*, 934 F.3d
> at 637. … [T]he 2021 Policy did not entirely prevent
> immigration-enforcement actions at sensitive places.

*New England Synod, Evangelical Lutheran Church in America v. Dep't of*

*Homeland Security*, No. 4:25-cv-40102, ECF 74 at 51–52 (D. Mass. Feb. 13,

2026).

**Defendants' Reply in Support of**
          **Motion to Dismiss Amended Complaint**

2.      A second proposition confirms why dismissal is required: The people

potentially subject to any enforcement actions contemplated by the 2025

Guidance are not parties to this action.

That fact is especially problematic for Plaintiffs relying on associational

standing, which requires that "neither the claim asserted, nor the relief

requested requires the participation of individual members in the lawsuit."

ECF 63 at 11–12 (quoting *Friends of the Earth, Inc. v. Laidlaw Env't Servs.*

*(TOC), Inc.*, 528 U.S. 167, 181 (2000)). The opposition brief supposes that

individual participation would not be necessary for the relief requested, but the

brief says nothing about the claims asserted. *Id.*

The Court needs individual participation to adjudicate the RFRA and

expressive-association claims. The people who have the real interest in litigating

the question whether the 2025 Guidance burdens their religious exercise and

their right to associate are the people who feel that they cannot enjoy their

rights because they might be subject to immigration enforcement action. Those

people have no independent representation in this action. And, because most

Plaintiffs in this action are based outside of Oregon, their constituents probably

are beyond the subpoena power of the Court, creating problems with the

development of an evidentiary record.

In addition to associational standing, the absence of parties directly

affected by immigration enforcement actions confirms that the complaint is not

**Page 7      Defendants' Reply in Support of**
**             Motion to Dismiss Amended Complaint**

seeking a "remedy … tailored to redress the plaintiff[s'] particular injury." *Gill*, 585 U.S. at 73. The complaint challenges internal guidance that has no direct effect on these Plaintiffs; it does not challenge the conduct of immigration officers or that conduct's effect on people absent from this lawsuit. If those people believe that they are aggrieved by the conduct of immigration officers, they can pursue appropriate causes of action to redress alleged injury from that conduct.

Respectfully submitted this 13th day of February, 2026.

SCOTT E. BRADFORD
United States Attorney
District of Oregon


/s/ *Benjamin T. Hickman*
BENJAMIN T. HICKMAN
Assistant United States Attorney
Attorneys for Defendants