**SCOTT E. BRADFORD, OSB #062824**
United States Attorney
District of Oregon
**BENJAMIN T. HICKMAN, DCB #498167**
Assistant United States Attorney
Benjamin.Hickman@usdoj.gov
1000 SW Third Avenue, Suite 600
Portland, Oregon 97204-2936
Phone: 503.727.1000
        Attorneys for Defendants


# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

| | |
|---|---|
| **PINEROS Y CAMPESINOS UNIDOS DEL NOROESTE, et al.,** | Case No. 6:25-cv-00699-AA |
| Plaintiffs, | **DEFENDANTS' RESPONSE IN OPPOSITION TO MOTION FOR STAY UNDER 5 U.S.C. § 705** |
| **v.** | |
| **KRISTI NOEM, et al.,** | |
| Defendants. | |

Because injunctive relief is a matter of equity, a party seeking the relief must not delay. The Huffman Memorandum issued more than 13 months ago. And about two months ago, during a phone conference in which the Court ruled that it would consider Defendants' motion to dismiss before it would consider the merits of the Administrative Procedure Act claims, Plaintiffs said nothing of their intention to move for a universal, nationwide stay under the APA before the Court ruled on the motion to dismiss. ECF 50. The four equitable factors do not favor the NEA and AFT's request for a stay.

1.    The NEA and AFT cannot claim irreparable harm because they would have sought a stay more than a year ago if the mere issuance of the Huffman Memorandum had caused irreparable harm. A "long delay before seeking a preliminary injunction implies a lack of urgency and irreparable harm." *Oakland Tribune, Inc. v. Chronicle Pub. Co.*, 762 F.2d 1374, 1377 (9th Cir. 1985).

The declarations from the educators and healthcare workers do little to support the unions' claim that the Huffman Memorandum, rather than actual immigration enforcement actions, is the source of the alleged harm. The declarants state that they heard about the Huffman Memorandum through news reports and union trainings around the time the memorandum issued, in January 2025. *E.g.*, A-R Decl. ¶ 6, C-A Decl. ¶ 7, K-G Decl. ¶ 6, L-B-E Decl.

**Page 1    Defendants' Response in Opposition to Motion for Stay
          Under 5 U.S.C. § 705**

¶ 7; *see also* ECF 67 at 7. One would expect that the unions would have sought to stay the issuance of the Huffman Memorandum in early 2025.

The declarants, in fact, say nothing else about the Huffman Memorandum after they learned about it in early 2025. They recount experiences—harrowing experiences, no doubt—about immigration enforcement actions at and near schools and healthcare sites. *E.g.*, A-R Decl. ¶¶ 12–13, C-A Decl. ¶ 8, K-G Decl. ¶ 9, L-B-E Decl. ¶ 9; *see also* ECF 67 at 7. But the unions, apparently, did not seek injunctive relief to address the actual enforcement actions at the time they happened, nor are they requesting relief to stop actual enforcement actions here.

It is true that a movant's delay alone often is not a dispositive factor. *See Arc of Calif. v. Douglas*, 757 F.3d 975, 990 (9th Cir. 2014). It is also true that the passage of a law can be the source of irreparable harm. *Doe v. Horne*, 115 F.4th 1083, 1111–12 (9th Cir. 2024). Defendants do not contend that the unions' delay is the sole reason for denying a stay, but that the unions' delay reinforces Defendants' view that a stay of the Huffman Memorandum would do nothing to address the actual conduct of which the unions complain.

2.      The NEA and AFT are not likely to succeed on the merits for the same reasons argued in Defendants' pending motion to dismiss: The Huffman Memorandum, a component of the 2025 Guidance, does not constitute final agency action; the memorandum addresses matters committed to agency

**Page 2      Defendants' Response in Opposition to Motion for Stay
            Under 5 U.S.C. § 705**

discretion by law; and the NEA and AFT lack standing. ECF 51 at 17, 29–31; ECF 136 at 2, 5–6.

As fully argued in the motion to dismiss, the lack of redressability is especially clear. Immigration officers could have taken the same actions described in the declarations before the Huffman Memorandum issued. ECF 136 at 2–6. An order rescinding the Huffman Memorandum would not protect the educators and healthcare workers from the actions recounted in the declarations. *Id.*

Defendants assume without conceding for purposes of this motion that the NEA and AFT could prevail on the merits of their APA challenge. The Court, however, need not reach the merits because of the threshold defects in the APA claims.

3.      When the government is the opposing party, the balance of hardships and the public interest merge. *See Nken v. Holder*, 556 U.S. 418 435 (2009).

Internal agency guidance is lifeblood for the Executive Branch's everyday work, from environmental protection to Social Security to patent examination to immigration. It is difficult to imagine how the government could conduct its business on behalf of the public if private parties could block internal guidance more than a year after it was issued and when blocking the guidance would yield no benefit for the private parties.

**Page 3      Defendants' Response in Opposition to Motion for Stay
          Under 5 U.S.C. § 705**

4.    If the Court grants a stay, the Court should reject the unions' request for a universal stay and limit any stay to the parties to this action. *See* ECF 67 at 36–37.

A Section 705 stay is subject to the same equitable limits as a preliminary injunction. Section 705 was designed "to reflect existing law … and not to fashion new rules of intervention for District Courts." *Sampson v. Murray*, 415 U.S. 61, 68 n.15 (1974). The House Report that accompanied the APA explained that relief under Section 705 should "normally, if not always, be limited the parties' complainant." Administrative Procedure Act, S. Doc. No. 79-248, at 277 (1946). The Supreme Court recently instructed that "[w]hen interpreting a statute that authorizes federal courts to grant" preliminary relief, courts "do not lightly assume that Congress has intended to depart from established principles" of equity. *Starbucks Corp. v. McKinney*, 602 U.S. 339, 346 (2024) (citation omitted). The plain language of Section 705 requires the Court to consider relief that merely "preserve[s] status or rights pending conclusion of the review proceedings" tailored "to the extent necessary to prevent irreparable injury." 5 U.S.C. § 705. In limiting such relief "to the extent necessary to prevent irreparable injury," *id.*, the statue directs courts to apply traditional equitable principles, which include tailoring relief to be no more intrusive than necessary to prevent irreparable harm to the parties. Thus, Section 705's text, precedent, and the applicability of the injunction standard confirm that Section 705 is

**Page 4**    **Defendants' Response in Opposition to Motion for Stay
                 Under 5 U.S.C. § 705**

constrained by the same traditional equitable principles as the Judiciary Act of 1789. See *Trump v. CASA, Inc.*, 145 S. Ct. 2540, 2553 (2025). And just as those principles foreclose universal preliminary injunctions, they also foreclose universal relief under Section 705. *See id.* at 2556. So does 8 U.S.C. § 1252(f), which bars lower courts from restraining the government from apprehending aliens as authorized by Sections 1226 and 1231 of Title 8 of the U.S. Code.

The unions argue that the "complete-relief" principle mandates a nationwide stay because their membership spans the country. ECF 67 at 37. The Ninth Circuit has rejected that proposition. "Under this [complete-relief] principle, the question is not whether an injunction offers complete relief to *everyone* potentially affected by an allegedly unlawful act; it is whether an injunction will offer complete relief *to the plaintiffs before the court.*" *Immigrant Defs. L. Ctr. v. Noem*, 145 F.4th 972, 995 (9th Cir. 2025) (quoting *CASA*, 145 S. Ct. at 2257–58). When the Ninth Circuit endorsed a universal stay, it was because a stay could not be structured on an individual basis: "Postponing the rule just for some individuals would require rewriting the statute itself …." *Nat'l TPS Alliance v. Noem*, 150 F. 4th 1000, 1029 (9th Cir. 2025).

Here, the Court could grant a stay limited to the parties to this action. Defendants would be capable of determining whether enforcement actions would be subject to a stay because they could determine in advance whether an action would be against a Plaintiff to this action. The Court would not be required to

**Page 5**    **Defendants' Response in Opposition to Motion for Stay Under 5 U.S.C. § 705**

rewrite statutes or regulations. To grant the unbounded relief that the unions request would violate *CASA*'s and *Immigrant Defenders*' premise that injunctive relief does not extend by default to everyone potentially affected by the alleged harm.

Respectfully submitted this 26th day of February, 2026.

> SCOTT E. BRADFORD
> United States Attorney
> District of Oregon
>
>
> /s/ *Benjamin T. Hickman*
> BENJAMIN T. HICKMAN
> Assistant United States Attorney
> Attorneys for Defendants

**Page 6      Defendants' Response in Opposition to Motion for Stay
          Under 5 U.S.C. § 705**