STEPHEN W MANNING, OSB No. 013373
stephen@innovationlawlab.org,
smanning@ilgrp.com
INNOVATION LAW LAB
333 SW 5th Ave., Suite 200
Portland, OR 97204-1748
Telephone: +1 503-922-3042

Additional counsel on last page

JEHAN A. PATTERSON, D.C. No. 1012119*
jpatterson@cov.com
COVINGTON & BURLING LLP
One CityCenter, 850 Tenth Street, NW
Washington, DC 20001-4956
Telephone: +1-202-662-5129

*Pro hac vice

**UNITED STATES DISTRICT COURT**
**DISTRICT OF OREGON**
**Eugene Division**

| | |
|---|---|
| PINEROS Y CAMPESINOS UNIDOS DEL NOROESTE; AUGUSTANA LUTHERAN CHURCH; OUR LADY OF GUADALUPE PARISH; SAN FRANCISCO INTERFAITH COUNCIL; WESTMINSTER PRESBYTERIAN CHURCH; NATIONAL EDUCATION ASSOCIATION; AMERICAN FEDERATION OF TEACHERS; AMY LOMANTO; HANNA MAE ANDERSON; LAUREN FONG; and CAROLINE KEATING MEDEIROS, <br><br> *Plaintiffs,* <br><br> v. <br><br> KRISTI NOEM, in her official capacity as Secretary of Homeland Security; U.S. DEPARTMENT OF HOMELAND SECURITY; TODD LYONS, in his official capacity as Acting Director of Immigration and Customs Enforcement; U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT; RODNEY S. SCOTT in his official capacity as Commissioner of Customs and Border Protection; U.S. CUSTOMS AND BORDER PROTECTION, <br><br> *Defendants.* | Case No. 6:25-cv-699-AA <br><br><br> **PLAINTIFFS NATIONAL EDUCATION ASSOCIATION AND AMERICAN FEDERATION OF TEACHERS' REPLY IN SUPPORT OF EMERGENCY MOTION FOR STAY UNDER 5 U.S.C. § 705** |

**INTRODUCTION**

Rather than engage with Plaintiffs' numerous legal arguments and declarations demonstrating irreparable harm, Defendants essentially urge the Court to look away. Defendants' Opposition, focused on non-merits arguments that largely misconstrue the nature of Plaintiffs' injuries and legal claims, does nothing to undercut Plaintiffs' entitlement to immediate relief. The Court should grant Plaintiffs' motion for a stay.

Given the extent of Plaintiffs' ongoing injuries, Plaintiffs National Education Association ("NEA") and American Federation of Teachers ("AFT") respectfully request a hearing on this motion at the Court's earliest convenience.

**ARGUMENT**

**I.    Plaintiffs NEA and AFT Were Not Dilatory in Seeking Relief.**

Defendants do not dispute that NEA's and AFT's members, along with AFT itself, suffer ongoing irreparable harm. *See* Opposition to Motion for Stay ("Opp."), Dkt. 144 at 3 (describing experiences of educator and healthcare worker declarants as "harrowing experiences, no doubt"). Defendants instead fault Plaintiffs for waiting to seek a stay of the Huffman Memorandum. *Id.* at 2. Both Ninth Circuit precedent and the factual record of escalating harms, *see* Motion for Stay ("Mot. for Stay"), Dkt. 67 at 7, 13–15, confirm that Plaintiffs NEA and AFT did not unduly delay seeking relief.

The passage of time "is not particularly probative in the context of ongoing, worsening injuries" with a "cumulative impact." *Arc of California v. Douglas*, 757 F.3d 975, 990 (9th Cir. 2014). NEA's and AFT's members' injuries, as well as AFT's injuries, fit this description. NEA's and AFT's members began experiencing injuries from the Huffman Memorandum immediately upon its issuance. These harms have accumulated and intensified as immigration enforcement activities have escalated in and near schools and healthcare facilities pursuant to the

PLAINTIFFS
NEA AND AFT'S REPLY ISO 5 U.S.C. § 705 STAY MOTION          Page 1

Memorandum's authority. *See* Mot. for Stay at 7, 13–15. Recent months saw a sharp acceleration of these activities—and resulting injuries—at sensitive locations, making emergency relief urgent. *See id.* at 13–15. These ongoing and compounding effects of the Huffman Memorandum's rescission of protections for sensitive locations—including emotional and psychological distress suffered by educators and healthcare workers, increased workloads, and disruptions to the school and hospital environments—underscore, rather than undermine, the critical need for emergency relief. *See* Mot. for Stay at 32–39. In any event, as Defendants agree, Opp. at 2, "delay is but a single factor to consider in evaluating irreparable injury," and "courts are loathe to withhold relief *solely on that ground.*" *Cuviello v. City of Vallejo*, 944 F.3d 816, 833 (9th Cir. 2019) (emphasis in original) (quoting *Arc of Cal. v. Douglas*, 757 F.3d 975, 990 (9th Cir. 2014)). That is particularly true where, as here, "Plaintiffs have come forth with evidence demonstrating that without [preliminary relief] they will be irreparably harmed." *Prisoners' Legal Servs. of N.Y. v. U.S. Dep't of Homeland Sec.*, 2025 WL 2466664, at *14 (S.D.N.Y. Aug. 5, 2025).

The timing of this motion bears little resemblance to the "long delay" in *Oakland Tribune, Inc. v. Chronicle Pub. Co.*, 762 F.2d 1374, 1377 (9th Cir. 1985), upon which Defendants rely. Opp. at 1. There, plaintiffs attempted to suddenly enjoin contractual provisions that had been in place for years despite no new harms or "compelling reason" to move for emergency relief. *Oakland Tribune*, 762 F.2d at 1377. Unlike the plaintiffs in *Oakland Tribune*, Plaintiffs NEA and AFT moved for emergency relief after amassing a growing record of their accumulating and worsening harms, escalating from the initial fear and instability caused by the Huffman Memorandum to the injuries caused by the surge in immigration enforcement activity at and around sensitive locations in recent months. *See, e.g.,* L-B-E-¶¶ 9–17 (accumulating harms since January 2025) A-R-¶¶ 16, 18 (harms began in Spring 2025 and continued through February 2026);

A-N-¶ 15 (harms escalated in Fall 2025); S-G-T-¶¶ 7–13 (harms from severe disruption to school environment in January 2026). In these circumstances, "waiting to file for preliminary relief until a credible case for irreparable harm can be made is prudent rather than dilatory." *Arc of Cal.,* 757 F.3d at 991; *see also S.A. v. Trump*, 2019 WL 990680, at *14 (N.D. Cal. Mar. 1, 2019) (waiting ten months to challenge Department of Homeland Security ("DHS") policy was "not suggestive of the plaintiffs' sleeping on [their] rights, as opposed to the plaintiffs' possibly waiting to file for preliminary relief until a credible case for irreparable harm can be made"); *see also Whitaker by Whitaker v. Kenosha Unified School Dist. No. 1 Bd. of Educ.*, 858 F.3d 1034, 1040–42, 1046 (7th Cir. 2017), *abrogated in part on other grounds as recognized in Kluge v. Brownsburg Cmty. Sch. Corp.*, 150 F.4th 792 (7th Cir. 2025) (finding that student's delay in filing suit for a year did not undermine argument for irreparable harm).

## II.   Plaintiffs NEA and AFT Appropriately Seek a Full Stay of the Huffman Memorandum.

Defendants' contention that this Court should "limit any stay to the parties to this action," Opp. at 4, finds no basis in the Administrative Procedure Act ("APA"), the Supreme Court's holding in *Trump v. CASA, Inc.*, 606 U.S. 831 (2025*)*, or the Immigration and Nationality Act ("INA"). Indeed, Section 705, the INA, and the overwhelming weight of court decisions after *CASA*[1] all support the conclusion that the proper relief here is a full stay of the Huffman Memorandum. Moreover, relief limited to the parties presents workability problems.

---

[1] *See, e.g.*, *Nat'l TPS Alliance v. Noem*, 150 F.4th 1000, 1028 (9th Cir. 2025) (postponing vacatur notice of the prior extension of Venezuelan Temporary Protection Status, "effective nationwide"); *Am. Fed'n of Tchrs. v. Dep't of Educ.*, 796 F. Supp. 3d 66, 119 (D. Md. 2025) ("Like every other court to consider this issue since *CASA*, this Court believes the APA has always expressly authorized vacatur, and *CASA* did not change that."); *Or. Counsel for Humanities v. DOGE*, 794 F. Supp. 3d 840, 898 (D. Or. 2025) ("The Court does not agree with Defendants that relief granted under the APA must comport with the principles of *CASA*, because *CASA* is not a case about § 705 stays."); *Doe v. Trump*, 796 F. Supp. 3d 599, 603 (N.D. Cal. 2025) ("[T]he Court concludes

The APA authorizes courts to "issue all necessary and appropriate process to postpone the effective date of an agency action," 5 U.S.C. § 705, and to "hold unlawful and set aside agency action," 5 U.S.C. § 706(2). Under the plain terms of the APA, the relief Congress authorized centers on the agency action itself—*not* on the parties. Indeed, "[t]he text and history of the APA authorize vacatur"—and stay—of agency action universally. *See Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*, 603 U.S. 799, 829 (2024) (Kavanaugh, J., concurring). In any event, Defendants' cherry-picked statement from the legislative record, *see* Opp. at 5, cannot overcome Section 705's plain text or other legislative history to the contrary.[2]

Contrary to Defendants' argument, *see* Opp. at 2, existing law at the time of the APA's passage lends additional support to the conclusion that Section 705 authorizes a full stay of the agency action. *See Cabrera v. U.S. Dep't of Lab.*, 792 F. Supp. 3d 91, 106 (D.D.C. 2025) ("[P]re-APA cases confirm that an interim form of vacatur was understood by both courts and Congress to be the ordinary preliminary remedy in a challenge to an unlawful agency action."); *Corner Post,*

---

Defendant has not shown a likelihood of success on the merits of its claim that *CASA* precludes the Court from ordering universal relief."); *City of Columbus v. Kennedy*, 796 F. Supp. 3d 123, 176 (D. Md. 2025) ("[T]he limiting principle on universal or national injunctions announced in *CASA* does not apply to APA cases like the one at bar."); *Drs. for Am. v. Off. of Pers. Mgmt.*, 793 F. Supp. 3d 112, 148 n.17 (D.D.C. 2025) ("[A]s this is a case involving APA vacatur, not a universal or national injunction, ... [*CASA*] does not apply."); *Walker v. Kennedy*, 790 F. Supp. 3d 138, 146 (E.D.N.Y. 2025) ("*CASA* does not require the Court to reconsider its stay."); *Ass'n of Am. Univs. v. Dep't of Defense*, 792 F. Supp. 3d 143, 182 (D. Mass. 2025) (finding that "a stay under the APA" is not "subject to the same limitations espoused in *CASA*"); *Refugee & Immigrant Ctr. for Educ. & Legal Servs. v. Noem*, 793 F. Supp. 3d 19, 104-05 (D.D.C. 2025) (noting post-*CASA* that binding precedent and the text of the APA plainly authorize vacatur).

[2] Congressional reports state that Section 705 "permits either agencies or courts, if the proper showing be made, to maintain the status quo." S. Rep. No. 79-752, at 213 (1945). While Congress may have given courts discretion to determine the scope of relief necessary to "prevent irreparable injury," 5 U.S.C. § 705, Congress did *not* say that § 705 relief should *always* be limited to the parties, S. Doc. No. 79-248, at 277 (1946) ("While the section would not permit a court to grant an initial license, it provides intermediate judicial relief for every other situation in order to make judicial review effective.").

603 U.S. at 829 (Kavanaugh, J., concurring) (discussing statutes enacted pre-APA authorizing courts to set aside agency actions). Defendants' citation to *Sampson v. Murray*, 415 U.S. 61, 68 n.15 (1974), omits the Supreme Court's *full* statement, which clarifies that "[t]he relevant legislative history of [Section 705] indicates that it was primarily intended to reflect existing law *under the Scripps-Howard doctrine*, discussed *infra*, and not to fashion new rules of intervention for District Courts." *Sampson*, 415 U.S. at 68 n.15 (emphasis added). *Scripps-Howard*, a pre-APA case, "recognize[d] the existence of the power to grant a stay" of an administrative order and concluded that Congress did not "deprive the courts of this historic power" through the Urgent Deficiencies Act. *Scripps-Howard Radio v. F.C.C.*, 316 U.S. 4, 17 (1942); *id.* at 9 (finding it reasonable that a court "should be able to prevent irreparable injury to the parties *or to the public* resulting from the premature enforcement of a determination which may later be found to have been wrong") (emphasis added).

Nor does *CASA* support Defendants' argument in favor of a limited stay. The Supreme Court was explicit that "[n]othing [the Court] say[s] today resolves the distinct question whether the Administrative Procedure Act authorizes federal courts to vacate federal agency action." *CASA*, 606 U.S. at 847 n.10; *see also id.* at 869 (Kavanaugh, J., concurring) ("And in cases under the Administrative Procedure Act, plaintiffs may ask a court to preliminarily 'set aside' a new agency rule."). A court in this District has already expressly rejected Defendants' argument that "Section 705 is constrained by the same traditional equitable principles as the Judiciary Act of 1789." Opp. at 4-5; *see Oregon Council for Humanities*, 794 F. Supp. 3d at 898 ("[T]he Court does not agree with Defendants that relief granted under the APA must comport with the principles of *CASA*, because *CASA* is not a case about § 705 stays."). Although a Ninth Circuit panel found *CASA*'s "complete-relief principle" to provide "some useful guidance for crafting interim equitable

relief" on an appeal of a 705 stay, *see Immigrant Defenders Law Center v. Noem*, 145 F.4th 972, 995 (9th Cir. 2025), a subsequent panel of the Ninth Circuit declined to narrow a full stay of agency action where doing so would fail to provide complete relief to a nationwide membership organization and relief could not be structured on an individual basis, *see Nat'l TPS Alliance*, 150 F.4th at 1028–29.

A "stay limited to the parties to this action," Opp. at 5, likewise could fail to provide complete relief to NEA's more than three million members in over 14,000 communities across all 50 states, and AFT's nearly two million members across the country. A patchwork approach to enforcing a stay of the Huffman Memorandum presents workability problems that would undoubtedly open the door to error. If Defendants have it their way, their agents would be required to follow one set of obligations under the Mayorkas Memorandum when they are operating at or near NEA's and AFT's members' schools, healthcare facilities, and bus stops that are subject to the stay, but could rely on their unfettered discretion under the Huffman Memorandum for other locations not subject to the stay. Such implementation could mean, for example, applying different rules between an AFT-affiliated school and a non-AFT-affiliated school which are located within blocks of each other, creating a strong possibility of error.

Finally, Defendants' argument that 8 U.S.C. 1252(f)(1) bars a Section 705 stay is equally unavailing. "[B]y its plain terms, and even by its title, [Section 1252(f)] is nothing more or less than a limit on injunctive relief." *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 481 (1999); *see also Biden v. Texas*, 597 U.S. 785, 800-01 (2022); *see also Immigrant Defenders Law Center*, 145 F.4th at 990 ("[W]e hold that § 1252(f)(1) does not bar the district court's stay pursuant to § 705 of the APA.").

A universal stay of the Huffman Memorandum is appropriate.

### III.    Plaintiffs NEA and AFT Have Established Standing.

Defendants limit their standing arguments to two cursory remarks on causation and redressability. *See* Opp. at 2–4. As Plaintiffs have explained, each of these arguments fails. Plaintiffs' Opposition to Defendants' Motion to Dismiss ("Opp. to Mot. to Dismiss"), Dkt. 63 at 22–26.

First, Defendants suggest that Plaintiffs' NEA and AFT's harms are not caused by the Huffman Memorandum but rather by "actual immigration enforcement actions." Opp. at 2. This argument is wrong on the law and on the facts. Opp. to Mot. to Dismiss at 22–24; *see also* Mot. for Stay at 32–39. Under this Circuit's precedent, Defendants' challenged conduct need not be the proximate cause, *see Maya v. Centex Corp.*, 658 F.3d 1060, 1070 (9th Cir. 2011), nor the only cause, *see Nat. Res. Def. Council v. U.S. Env't Prot. Agency*, 38 F.4th 34, 55 (9th Cir. 2022), of the Plaintiffs' injuries. And as a factual matter, Plaintiffs have shown both that many of Defendants' recent immigration enforcement actions in or around sensitive locations have only taken place after the January 2025 Mayorkas Memorandum's rescission and Huffman Memorandum's issuance, and that Plaintiffs' injuries—stemming both from the prospect of these immigration enforcement actions and the completed actions themselves—are a direct result of this policy change. *See* Opp. to Mot. to Dismiss at 22–26; Mot. for Stay at 32–39. Plaintiffs need not show that enforcement actions could *never* have happened under the prior policy. *See Larson v. Valente*, 456 U.S. 228, 243 n.15 (1982) (plaintiffs "need not show that a favorable decision will relieve [their] *every* injury") (emphasis in original); Plaintiffs' Sur-Reply in Support of Plaintiffs' Opposition to Defendants' Motion to Dismiss ("Sur-Reply ISO Opp. to Mot. to Dismiss"), Dkt. 139 at 4. Nevertheless, before January 2025, many of NEA's and AFT's members had never

experienced or even heard of immigration enforcement at or near schools or healthcare facilities,[3] and Defendants do not introduce any evidence suggesting otherwise. *See generally* Opp.

As a result of the Huffman Memorandum, Plaintiffs' members are suffering injury from the newfound threat of immigration enforcement at schools and healthcare facilities, and they are also experiencing harms from the actual enforcement activities occurring at or near these locations—activities that were severely constrained under prior policy. *E.g.*, Opp. to Mot. to Dismiss at 17–21; Mot. for Stay at 13–23, 32–39. It is this sea change in Defendants' ability to engage in enforcement activity at or near sensitive locations without long-established safeguards— not some generalized fear of increased immigration enforcement *elsewhere*—that has directly caused Plaintiffs harm.

Second, Defendants argue that Plaintiffs' harms are not redressable because "immigration officers could have taken the same actions . . . before the Huffman Memorandum issued." Opp. at 4. But Defendants would not have needed to revoke the Mayorkas Memorandum and issue the Huffman Memorandum if they believed immigration agents were already permitted to target schools, churches, and medical facilities at the unfettered discretion of immigration agents. In fact, Defendants earlier publicly espoused the opposite belief, claiming in a 2025 press release announcing the Huffman Memorandum that prior policy "*thwart[ed]* law enforcement in or near so-called 'sensitive' areas," and that its rescission meant "[c]riminals will *no longer* be able to hide

---

[3] *See, e.g.*, A-A- Decl. ¶ 7; A-B- Decl. ¶ 6; A-H- Decl. ¶ 5; A-N- Decl. ¶ 7; C -A- Decl. ¶ 7; E-F- Decl. ¶ 7; H-M- Decl. ¶ 6; H -R- Decl. ¶ 6; J-G- Decl. ¶ 7; J-R-Decl. ¶ 6; K-D- Decl. ¶ 7; K -G- Decl. ¶ 5; L -B-E- Decl. ¶ 6; L-V- Decl. ¶ 7; M-A-Decl. ¶ 6; M-D- Decl. ¶ 6; M-G- Decl. ¶ 7; M- L-S- Decl. ¶ 7; N-A-Decl. ¶ 7; P-S- Decl. ¶ 5; S-A- Decl. ¶ 7; S-D- Decl. ¶ 8; S-G-T- Decl. ¶ 6; S-R- Decl. ¶ 8; T-S- Decl. ¶ 6; T-K- Decl. ¶ 7; T-W- Decl. ¶ 8.

in America's schools and churches to avoid arrest."[4] Defendants cannot have it both ways, and the Court should not credit their post-hoc attempt to reframe the Huffman Memorandum.

In sum, Defendants' suggestion that NEA and AFT should be moving for injunctive relief against each individual enforcement action, besides being impractical, ineffective, and likely untimely, would do nothing to redress the ongoing harms caused by the Huffman Memorandum's elimination of protections for sensitive locations. For all the above reasons, a stay of the Huffman Memorandum would redress Plaintiffs' injuries. *See, e.g.*, *Larson*, 456 U.S. at 243 n.15; *Nat. Res. Def. Council*, 38 F.4th at 56 ("[T]he redressability requirement is satisfied when relief *may* influence the agency's ultimate decision of whether to take or refrain from taking a certain action.") (emphasis in original) (internal quotation marks and citation omitted); *Philadelphia Yearly Meeting of Religious Soc'y of Friends v. U.S. Dep't of Homeland Sec.*, 767 F. Supp. 3d 293, 319 (D. Md. 2025) ("[R]edressability is satisfied if a favorable ruling would result in the removal of even one obstacle to the exercise of one's rights, even if other barriers remain.").

## IV.    Plaintiffs NEA and AFT Have Established They Are Likely to Succeed on the Merits.

Plaintiffs have amply demonstrated they are likely to succeed in proving that the Huffman Memorandum is arbitrary and capricious because it fails each of the basic administrative law requirements for reasoned decision-making. Mot. for Stay at 27–29 (failure to provide reasoned explanation); *id.* at 29–31 (failure to consider obvious alternatives); *id.* at 31–32 (failure to consider reliance interests). Other than to "assume . . . NEA and AFT could prevail on the merits of their APA challenge," Opp. at 4, Defendants offer no response to these claims in their Reply.

---

[4] *Statement from a DHS Spokesperson on Directives Expanding Law Enforcement and Ending the Abuse of Humanitarian Parole*, DHS (Jan. 21, 2025), https://www.dhs.gov/news/2025/01/21/statement-dhs-spokesperson-directives-expanding-law-enforcement-and-ending-abuse (emphases added).

PLAINTIFFS
NEA AND AFT'S REPLY ISO 5 U.S.C. § 705 STAY MOTION                Page 9

*See generally* Opp. Instead, they raise only in passing that the Huffman Memorandum does not constitute final agency action and that the matter is committed to agency discretion by law. *Id.* at 3–4. But Defendants make no new arguments, provide no new evidence, nor even offer any new citations for these claims. *Id.* at 3 (basing arguments on "the same reasons argued in Defendants' pending motion to dismiss"). Accordingly, Plaintiffs likewise incorporate by reference their arguments on these issues, addressed at length in prior briefing. Opp. to Mot. to Dismiss at 26–34; Mot. for Stay at 25 n.4; Sur-Reply ISO Opp. to Mot. to Dismiss at 2–4.

Plaintiffs have demonstrated a likelihood of success on the merits.

## V.    Plaintiffs NEA and AFT's Requested Relief is Equitable and in the Public Interest

On the balance of equities and public interest, Defendants contend only that the government could not "conduct its business on behalf of the public" if "private parties could block internal guidance more than a year after it was issued and when blocking the guidance would yield no benefit for the private parties." Opp. at 3. Aside from this perfunctory remark, they fail to engage in *any* balancing of equities or to address the public interest.

Plaintiffs have explained the substantial relief that they and their members would receive from a stay of the Huffman Memorandum. Mot. for Stay at 38–41, 43. Defendants fail to give any consideration to the significant harms that NEA and AFT have detailed in their 65 declarations, let alone balance those harms against Defendants' purported need to conduct immigration enforcement activity without restraint.[5]

---

[5] Defendants' claim of harm also undercuts their assertion that DHS could have taken the same enforcement actions under the Mayorkas Memorandum that it can under the Huffman Memorandum. As explained *supra*, if the two Memoranda were indeed equivalent, then a stay of the Huffman Memorandum would not affect the government's ability to "conduct its business." Opp. at 3.

PLAINTIFFS
NEA AND AFT'S REPLY ISO 5 U.S.C. § 705 STAY MOTION                Page 10

Defendants also do not make any effort to address the significant public interest in accessing sensitive locations that longstanding government policy recognized as a paramount "foundational principle" where "[t]o the fullest extent possible, [DHS] should not take an enforcement action in or near a location that would restrain people's access to essential services or engagement in essential activities."  Declaration of Benjamin T. Hickman, Dkt. 52, Ex. 3 at 2. Defendants further neglect to address the public's interest in the government following the law and engaging in reasoned decision-making when revoking a decades-old policy, on which Plaintiffs NEA's and AFT's members rely to feel safe in their workplaces and serve their communities.

## CONCLUSION

For the foregoing reasons and those in Plaintiffs' opening motion, the Court should grant Plaintiffs' motion to stay the Huffman Memorandum pending the conclusion of this litigation. Plaintiffs respectfully request a hearing on this motion at the Court's earliest convenience.

Dated: March 11, 2026

Respectfully submitted,

/s/ Jehan A. Patterson

| | |
|---|---|
| STEPHEN W MANNING, OSB No. 013373<br>stephen@innovationlawlab.org,<br>smanning@ilgrp.com<br>TESS HELLGREN, OSB No. 191622<br>tess@innovationlawlab.org<br>RACHEL LANDRY, Mass. No. 713320*<br>rachel@innovationlawlab.org<br>NELLY GARCIA ORJUELA, OSB No.<br>223308<br>nelly@innovationlawlab.org<br>INNOVATION LAW LAB<br>333 SW 5th Ave., Suite 200<br>Portland, OR 97204-1748<br>Telephone: +1 503-922-3042<br><br>Attorneys for Plaintiffs | JEHAN A. PATTERSON, D.C. No. 1012119*<br>jpatterson@cov.com<br>STANLEY YOUNG, Cal. No. 121180*<br>syoung@cov.com<br>QUYÊN TRUONG, D.C. No. 90010663*<br>qtruong@cov.com<br>ANALESE BRIDGES, D.C. No. 90029992*<br>abridges@cov.com<br>EVAN CHIACCHIARO, D.C. No. 90037819*<br>echiacchiaro@cov.com<br>MARIAM OLADIPO, D.C. No. 90028347*<br>moladipo@cov.com<br>COVINGTON & BURLING LLP<br>One CityCenter, 850 Tenth Street, NW<br>Washington, DC 20001-4956<br>Telephone: +1-202-662-5129 |

LUBNA A. ALAM, D.C. No. 982169*
lalam@nea.org
KATHERINE E. LAMM, D.C. No. 1006319*
klamm@nea.org
NATIONAL EDUCATION ASSOCIATION
1201 16th Street NW
Washington, DC 20036
(202) 822-7035

Attorneys for National Education Association

DANIEL MCNEIL, D.C. No. 455712*
dmcneil@aft.org
CHANNING COOPER, Md. No. 1212110182*
ccooper@aft.org
AMERICAN FEDERATION OF TEACHERS
555 New Jersey Avenue, N.W.
Washington, D.C. 20001
Telephone: +1 202-879-4400

Attorneys for American Federation of Teachers

*_Pro hac vice_

Attorneys for Plaintiffs

ESTHER H. SUNG, Cal. No. 255962*
esther.sung@justiceactioncenter.org
KAREN C TUMLIN, Cal. No. 234961*
karen.tumlin@justiceactioncenter.org
HILLARY LI, Ga. No. 898375*
hillary.li@justiceactioncenter.org
LAURA FLORES-PERILLA, Cal. No. 355645*
laura.flores-perilla@justiceactioncenter.org
BRANDON GALLI-GRAVES, Tx. No. 24132050*
brandon.galli-graves@justiceactioncenter.org
EMILY SATIFKA, Nj. No. 330452020*
emily.satifka@justiceactioncenter.org
JUSTICE ACTION CENTER
PO Box 27280
Los Angeles, CA 90027
Telephone: +1 323-450-7272

Attorneys for Plaintiffs

## CERTIFICATION OF COMPLIANCE WITH LR 7-2(B)

This brief complies with the applicable word-count limitation under Local Rule 7-2(b) because it contains 3619 words, including headings, footnotes, and quotations, but excluding the caption, table of contents, table of cases and authorities, signature block, exhibits, and any certificates of counsel.


Dated: March 11, 2026                              Respectfully submitted,

                                                   /s/ Jehan A. Patterson

                                                   JEHAN A. PATTERSON, D.C. No. 1012119*
                                                   jpatterson@cov.com
                                                   COVINGTON & BURLING LLP
                                                   One CityCenter, 850 Tenth Street, NW
                                                   Washington, DC 20001-4956
                                                   Telephone: +1-202-662-5129

                                                   *Pro hac vice